## Whitemarsh Township Referendum

*Elmer L. Menges,* for township.
*Duffy, McTighe & McElhone,* for defendant.

DANNEHOWER, J., September 30, 1955.—On August 8, 1955, a petition consisting of 21 pages, the first 16 of which are numbered, and purporting to be signed

by 246 registered and qualified electors of Whitemarsh Township, Montgomery County, a township of the second class, was filed in the quarter sessions court.

Each page of said petition contained the following heading:

"We the undersigned qualified electors of Whitemarsh Township, Montgomery County, hereby petition the County Board of Elections and the Quarter Sessions Court of Montgomery County, to place the following question on the printed official ballot for the November election 1955 for the said district of Whitemarsh Township:

"SHOULD WHITEMARSH BECOME A FIRST CLASS TOWNSHIP?"

The last page contained the following affidavit:

"*AFFIDAVIT:* I, Raymond K. Barcklow, residing at 4032 S. Warner Road, Lafayette Hill, Whitemarsh Township, do hereby make affidavit that I am a qualified elector of the political district mentioned in the above petition, and that the above signers, signed with full knowledge of the contents of the petition; that their respective residences are correctly stated therein; that they all reside in the County Named, and that each signed on the date set opposite his or her name; and to the best of my knowledge and belief signers are qualified electors.

"Signed and sworn to before me this 8 day of Aug. 1955.

Signed *Raymond K. Barcklow*
(Affiant)

"*s/Gordon H. Freas*
Gordon H. Freas, Notary Public
Conshohocken, Montgomery Co., Pa.
My Commission expires Jan. 29, 1959."

Each of the 20 preceding pages contained a similar affidavit form, but was not signed, executed or verified.

To this petition, on August 17, 1955, a qualified elector of the middle district of Whitemarsh Township, George E. Fink, on behalf of himself and other unnamed electors, filed his petition to set aside the referendum petition alleging the following reasons:

"(1) The petition or petitions consist of 21 unnumbered pages, only one of which contains a verification or affidavit.

"(2) That 20 of the sheets, while providing for a place for the affidavit or verification, did not contain proof that the alleged electors were in existence and residing at the addresses given, or that the signatures were genuine.

"(3) That the petition or petitions as filed is defective in that it does not comply with the various provisions of the Pennsylvania Election Code.

"(4) That the number of electors on the aforesaid petition or petitions who can qualify under the provisions of the Pennsylvania Election Code, and which number are required by the Acts of Assembly of the Commonwealth of Pennsylvania in order to have the matter properly presented to the electorate of Whitemarsh Township, is less than five per cent of the registered voters of Whitemarsh Township."

On September 26, 1955, counsel for the parties filed the following written stipulation:

"1. On August 8, 1955, there were 4,249 registered voters in the Township of Whitemarsh, Montgomery County, Pennsylvania.

"2. That the total of the number of registered voters appearing on the several papers filed to the above entitled number and term was in excess of five per cent of the total of registered voters within Whitemarsh Township on August 8, 1955."

Thereafter, on September 26, 1955, these objections were argued before the court en banc and are pending for decision. Being aware of the urgency for a very

274

prompt decision in view of the printing of the ballots and the approaching general election, we are handing down this opinion and decision without delay.

It is admitted by the stipulation filed, and after each elector signing the referendum petition had been checked, that the petition containing 246 signatures of qualified and registered voters is in excess of five percentum of the 4,249 registered voters in said township.

Therefore, the sole remaining question for decision is whether a petition for first class township referendum must comply with the requirements prescribed for nomination petitions, as provided by section 909 of the Pennsylvania Election Code of June 3, 1937, P. L. 1333, 25 PS §2869.

The First Class Township Law of June 24, 1931, P. L. 1206, as amended, 53 PS §19092-207, in relation to the submission of question to voters, which governs the referendum petition in question, provides as follows:

"At the first general or municipal election occurring, at least ninety days after the ascertainment, by special enrollment or from the last preceding United States census, that any township of the second class has a population of at least three hundred inhabitants to the square mile, and after a petition signed by at least five per centum of the registered voters of the township has been filed in the quarter sessions court, the question whether such township of the second class shall become a township of the first class shall be submitted to the voters of the township, and the county board of elections shall cause to be printed on separate ballots, to be used in such township at such election, a proper question framed in accordance with the Pennsylvania Election Code": as amended, July 24, 1941, P. L. 502, sec. 1; May 27, 1949, P. L. 1955, sec. 2.

We are convinced that such referendum petitions were never intended by the legislature to comply with the elaborately detailed information and strict requirements of nomination petitions because all this referendum act requires is a "petition signed by at least five per centum of the registered voters, etc." and said act is not repealed or affected by the Pennsylvania Election Code. The legislature intended and provided for a "petition" which made it simple, rather than complicated and difficult, to ascertain a full and free expression of the electorates' will with respect to the question submitted.

This must be so, because when the legislature enacted other statutes, e.g., the Liquor Code of April 12, 1951, P. L. 90, art. IV, sec. 472, in regard to local option referendum, it provided: "Said proceedings shall be in the manner and subject to the provisions of the election laws which relate to the signing, filing and adjudication of nomination petitions, insofar as such provisions are applicable": 47 PS §4-472. No such provision is contained in the First Class Township Law.

We, therefore, decide that since the provisions relating to first class township referendum petitions do not require the filing of any affidavits with the petition therefor, but only an affidavit as required by our local rules of court for any petition filed in our quarter sessions court, it is immaterial whether the affidavit was taken by one who supervised and directed the circulation and checking of the petitions rather than by the various parties who actually circulated them.

All of these objections are without merit.

And now, September 30, 1955, for the foregoing reasons, the petition to have the petition of certain electors of Whitemarsh Township for a first class township referendum set aside is hereby dismissed and the prescribed question for referendum, "Should

Whitemarsh Township Become a First Class Township?", is ordered to be placed by the county commissioners, acting in their capacity as the board of election, on separate ballots, as prescribed by law, to be used in said township at the general election to be held on Tuesday, November 8, 1955. Costs of this proceeding to be paid by the objector, George E. Fink.