**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., EAKIN, BAER, TODD, STEVENS, JJ.**


IN RE: PETITION TO SUBMIT BALLOT QUESTION TO CONCORD TOWNSHIP VOTERS

DELAWARE COUNTY BOARD OF ELECTIONS,
          Intervenor

APPEAL OF: COLETTE BROWN

: No. 126 MAP 2014
:
: Appeal from the order of Commonwealth
: Court at No. 1426 CD 2014 dated
: September 26, 2014 Affirming the order of
: the Delaware County Court of Common
: Pleas, Civil Division, at No. 2014-06512
: dated August 14, 2014.
:
: SUBMITTED:   November 21, 2014
:


## OPINION


MR. JUSTICE STEVENS                                    DECIDED:   July 20, 2015

      Collette Brown,[1] a Concord Township, Delaware County resident ("Appellant"), appeals the Commonwealth Court's order affirming the trial court's dismissal of her petition to place, on the November 2014 ballot, a referendum question seeking to change the Township's governmental status from second-class to first-class.   For the following reasons, we reverse the order of the Commonwealth Court and remand to the trial court for further proceedings, consistent with this opinion.

      The following issue of first impression has been presented before this Court:

*Does 53 P.S. § 55207 restrict granting of a registered voter petition to submit to voters of the subject township, a ballot question for reclassification to First Class, to the first municipal or general election at least ninety days*

---

[1] Although the lower court opinions list Brown and Concord First, a local citizens group, as Appellants, since Brown is a <u>pro</u> <u>se</u> litigant, she cannot represent Concord First.

*after only the ascertainment of the minimum population density specified in the statute of three hundred inhabitants per square mile, or does 53 P.S. § 55207 require submission of the ballot question to voters of the subject township at the first municipal or general election at least ninety days after both the ascertainment of minimum population density and after a petition signed by five per centum of the registered voter of the township is filed with the court?*

## I. *Background*

On July 28, 2014, pursuant to 53 P.S. § 55207, Appellant filed a petition with the Delaware County Court of Common Pleas, seeking to place the referendum question "Should Concord Township become a Township of the First Class?" on the November 2014 ballot. The petition contained 994 signatures (8.5%) out of the Township's 11,640 registered voters and claimed that as of the 2010 census, the Township had a population density of around 1,258 inhabitants per square mile ("IPSM"). As stated, both figures easily exceeded the statutory thresholds of 300 IPSM and 5% registered voter signatures, which Appellant believed operated as conjunctive preconditions.[2]

On August 6, 2014, seven named qualified electors ("Appellees") filed objections and claimed the petition was substantively and procedurally defective under the statute, which they argued was time-limited to the first municipal or general election occurring at least ninety days after the 2010 census. That same day, the Delaware County Bureau of

---

[2] The statute reads, in relevant part:

> At the first general or municipal election occurring, at least ninety days after the ascertainment, by special enrollment or from the last preceding United States census, that any township of the second class has a population of at least three hundred inhabitants to the square mile, and after a petition signed by at least five per centum of the registered voters of the township has been filed in the quarter sessions court, the question of whether such township of the second class shall become a township of the first class shall be submitted to the voters of the township . . . .

53 P.S. § 55207.

Elections ("Intervenor") filed a petition to intervene and a request for declaratory relief, claiming that in addition to not satisfying the statutory requirements, the petition should be dismissed because a home rule study referendum question was already on the ballot (which voters later approved), and that if Appellant's referendum question were successful, the subsequent change in Township government could violate the Pennsylvania Constitution.

The Delaware County Court of Common Pleas denied the petition on August 14, 2014. The trial court read 53 P.S. § 55207 to restrict second- to first-class township referendum questions to the first municipal or general election occurring at least ninety days after the township's population density has been formally ascertained at 300 or more IPSM,[3] as long as a petition has been signed by at least 5% of the township's registered voters. Noting that the last United States census was tallied in 2010 and presented to the Commonwealth in 2011, and that the first municipal and general elections occurring at least ninety days after respectively took place in 2012 and 2013, the trial court concluded that the petition failed to meet the statutory requirements.

A Commonwealth Court panel affirmed in a unanimous published opinion on September 26, 2014. See In re Petition to Submit Ballot Question to Concord Tp. Voters, 100 A.3d 765 (Pa.Cmwlth. 2014) (hereinafter "In re Petition"). Contrary to Appellant's argument that the "first . . . election occurring at least ninety days after" language applies to both the population density and petition signature filing requirements as simultaneous prerequisites, the Commonwealth Court found that:

---

[3] The population density requirement may be verified from the United States census or by "special enrollment." 53 P.S. § 55207. Special enrollment may be performed, no later than one year before the upcoming United States census, upon petition by the owners of 25% of a second-class township's assessed real estate. 53 P.S. § 55205. A specially appointed commissioner then determines if the township's population density meets the statutory threshold. Id.

"[F]irst election" relates only to the phrase with which it is immediately juxtaposed, "ascertainment [of population] . . . from the last preceding United States census." The phrase "first election 90 days after [ascertainment of population]" operates as a clear time limitation which serves the necessary purpose of ensuring that the population density upon which the ballot question is based remains accurate when the matter is put to the voters. The time limitation would be entirely eviscerated if the [appellants] could extend it by waiting several years to file their petition with the court.

In re Petition, 100 A.3d at 767.

The Commonwealth Court also noted that the original statute, enacted in 1931, did not require (or even allow for) petition signatures. Instead, the referendum question was automatically added to the next ballot occurring at least ninety days after the formal ascertainment of a second-class township's population density at 300 or more IPSM.[4] The Commonwealth Court accordingly found that the petition signature filing requirement, added to the statute in 1941, was not intended to change the ninety-day time limitation, which would otherwise frustrate its purpose.[5]

---

[4] See Act of Jun. 24, 1931, P.L. 1206, § 207 (original statute).

> At the first general or municipal election occurring at least ninety days after ascertainment, by special enrollment or from the United States census, including the United States census of [1930] and each subsequent census, that any township of the second class has a population of at least three hundred inhabitants to the square mile, the question whether such township of the second class shall become a township of the first class shall be submitted to the voters of the township . . . .

Id.

[5] See Act of Jul. 24, 1941, P.L. 502, §1 (first amended statute).
At the first general or municipal election occurring, *or at a special election held,* at least ninety days after the ascertainment, by special enrollment or from the last preceding United States census, that any township of the second class has a population of at least three hundred inhabitants to the square mile, *and after the filing of a petition signed by at least five per centum of the registered voters of the township has been filed in the quarter sessions court*, the question whether such township of the second class
(continued…)

Appellant filed a timely petition for allowance of appeal, and on October 17, 2014, we granted allocatur to address the issue as stated supra. On November 17, 2014, the Concord Township Government Study Commission ("Commission"), composed of seven named commissioners-elect ("Commissioners-Elect") who, pursuant to the Home Rule Charter and Optional Plans Law, 53 P.S. § 2911 et seq., were elected in November 2014 to form the Commission (together "Amici"), filed an amicus brief, sought intervenor status, and requested an enlargement in the briefing schedule. We denied Amici's application to intervene and for enlargement of briefing schedule on December 31, 2014.

## II. *Discussion*

### A. *Arguments of the Parties*

#### 1. *Appellant*

Redacting the words she believes are not in substantive dispute, Appellant presents the text of 53 P.S. § 55207 as follows:

> At the first . . . election occurring, at least ninety days after the ascertainment [that the township has the minimum population density], and after a petition [meeting its requirements] has been filed with the . . . court, the question . . . shall be submitted to the voters of the township . . . .

Appellant's Brief at 14. Appellant maintains that the grammatical structure of ". . . at least ninety days *after* the ascertainment . . . , *and after* the petition . . . has been filed" indicates both requirements must be met before determining the timing of "the first general or

---

(…continued)
> shall become a township of the first class shall be submitted to the voters of the township . . . . *A special election for such purpose shall be held . . . upon petition signed by at least five per centum of the registered voters of the township.* . . . .

Id. (emphasis in published statute to denote changes from original).

municipal election occurring at least ninety days after." Id (emphasis in original). Appellant adds that Appellees' interpretation "fundamentally alters the statute's language, adding a restrictive 'only' and changing the 'and after' phrasing for the petition prerequisite to 'and if.'" Id. at 15.

In addition to its plain text, Appellant avers the statutory history of 53 P.S. § 55207 and related statutes are favorable to her position. Appellant argues that although the original statute called for the automatic addition of the referendum question to the next eligible ballot, its 1941 revision, which added the petition signature filing requirement, "unambiguously tied both prerequisites to the determination of timing for which election the question would be submitted to voters." Appellant's Brief at 16. Appellant adds that the new option of a special election, placed as a clause between the generally scheduled elections and "at least ninety days after" clauses, indicates the legislature's intent that the petition signatures be filed at least ninety days before either type of election.[6] Appellant also believes that the ninety-day period was necessary for the county board of elections to adequately prepare the ballots and ballot instructions, especially in 1941.

Appellant additionally cites 53 P.S. § 55208, which controls where a second- to first-class township referendum question fails to obtain a majority vote.[7] Appellant first

---

[6] Appellant notes that although the legislature removed the special election provision when it amended the statute for the last time in 1949, it left the petition signature filing requirement in conjunction with the "*after . . . and after*" grammatical structure. Appellant's Brief at 18.

[7] See 53 P.S. § 55208 (returns of election and effect thereof).

> . . . . If a majority of the votes cast at any such election shall be in favor of remaining a township of the second class, no further proceedings shall be had for a period of two years, after which period the supervisors, by unanimous action, may, or, upon petition of ten per centum of the registered voters of the township, shall, through the County Board of Elections,
(continued…)

notes that the statute mandates a two-year wait before the question may be resubmitted "in the manner hereinbefore provided," meaning that second- to first-class referendum questions were never meant to be tethered to the first election immediately following the census. Appellant's Brief at 19. Appellant also claims that prior to this case, many former second-class townships; including Pocono, Monroe County (2013),[8] Lower Macungie, Lehigh County (2007), and Whitemarsh, Montgomery County (1956); approved and passed first-class referendums well beyond the first ballot available ninety-plus days after the most recent census.

Appellant further claims the lower courts' holding that a strict time limitation ensures the township's population density remains above the statutory threshold is faulty policy reasoning. Appellant argues that while "it is possible that a township with [a] population density just above the minimum might later fall below it, . . . given the unrelenting historic trend toward growing population, it is impossible . . . to justify an argument that the legislature had that overriding concern." Appellant's Brief at 22.[9]

_____

(…continued)
    resubmit the question to the electors of the township in the manner
    hereinbefore provided.

Id.

[8] The Pocono Township referendum was actually timely under the opposing parties' reading of the statute, since the full results of the 2010 census were not accepted by the Commonwealth until August 17, 2011. See Holt v. 2011 Legislative Reapportionment Comm'n, 614 Pa. 364, 378, 38 A.3d 711, 719 (2012) (noting that the Legislative Data Processing Center's acceptance of the complete 2010 census data package as "usable" triggered, in that case, "the ninety-day period for filing a preliminary redistricting plan").

[9] Appellant's sole citation in support of this claim is the general (though easily verifiable) statement that "Pennsylvania's population has continued to grow with every census since this statute was passed, up to and including the census of 2010." Appellant's Brief at 22-23 n.6. See Census of Population and Housing, U.S. CENSUS BUREAU (Dec. 3, 2014), https://www.census.gov/prod/www/decennial.html.

Appellant also remarks that 53 P.S. §§ 55209-55209(a) already address the scenario where a first-class township's population density falls below 300 IPSM.[10]  In that case, voters may (but are not required to) revert to second-class status via a referendum question that is automatically placed on the next ballot.   53 P.S. § 55209(a).

## 2. *Appellees*

Appellees respond that outside of special enrollment (which is not at issue here), 53 P.S. § 55207 requires timely utilization of the United States census.   Appellees assert that limiting second- to first-class township referendum questions to the first election following formal population density ascertainment is the only way to "allow the electorate, elected officials, potential candidates, and the County Board of Elections a rational and

---

[10] 53 P.S. §§ 55209-55209(a) state that:

> At any time, not less than one year before the time fixed for taking a decennial census of the United States, whenever the owners of twenty-five per centum of the assessed valuation of the real estate of any township of the first class shall present their petition to the court of quarter sessions averring that the township no longer has a population of three hundred inhabitants to the square mile, and shall give such security as the court may prescribe for the payment of all costs and expenses which may be incurred in any procedure had upon said petition, the court shall appoint a commissioner to perform the duties hereafter prescribed.   . . . .

53 P.S. § 55209 (ascertainment of population).

> At the first general or municipal election occurring at least ninety days after the ascertainment by special enrollment or from the last preceding United States census, that any township of the first class no longer has a population of at least three hundred inhabitants to the square mile, the question whether such township of the first class shall be reestablished as a township of the second class shall be submitted to the voters of the township . . . .

53 P.S. § 55209(a) (submission of question to voters; returns of election, and effect thereof).

reasonable basis to consider submission of [the] question to voters until the results of the next census are ascertained."  Appellees' Brief at 4.

Appellees otherwise maintain that Appellant's "distorted logic" would allow, with respect to the 2010 census, for the consideration of second- to first-class township referendum questions any time between 2012 and 2020.  Id.  Appellees claim that within this timeframe, "[p]ossibly 3 to 4 municipal election cycles could have taken place in which the majority of voters elected supervisors only to have this mandate potentially overturned," and that "a candidate could run for supervisor in a municipal election held 90 days after ascertainment, lose the election, then . . . circulate a petition for First Class the following year for the sole purpose of unseating the duly elected supervisor."  Id.

### 3.  *Intervenor*

Intervenor largely echoes Appellees' arguments, emphasizing that the plain text, statutory history, and sound public policy support the lower courts' reasoning. Intervenor also implies that Appellant's petition lacks sufficient signatures, noting that the trial court expressed concern without directly addressing the issue.

### 4.  ***Amici***

Amici note that Concord Township voters approved a referendum pursuant to the Home Rule Charter and Optional Plans Law, 53 P.S. § 2911 et seq., whereby Commissioners-Elect were chosen to study the possibility of home rule government and recommend accordingly.[11]  Amici argue that by establishing the Commission, Township voters have exercised their right to adopt their own form of local government.  Amici

---

[11] If the majority of commission members were to recommend a home rule charter or optional plan, a referendum would be placed on the ballot, giving Township voters the final decision.  Otherwise, the group would be discharged and no change would take place.

claim that if Appellant's referendum question were added to the ballot, which would purportedly be before the Commission even began its study, the reason for and purpose of that study would be rendered moot. Amici otherwise incorporate Appellees' and Intervenor's allegations that Appellant failed to comply with the statutory requirements.

Appellant counters that at the time Amici filed their brief, the results of the November election had not yet been certified, meaning the Commission had not validly formed and the Commissioners-Elect could not take legal action in its name. 53 P.S. § 2915(a). Appellant adds that even if the Commission were validly formed, it cannot seek relief because its purpose is limited to examining the possibility of home rule government. 53 P.S. § 2918. Appellant further alleges that the ballot question authorizing the Commission itself may have been unlawful, since "[a]n ordinance may not be passed . . . for the election of a government study commission . . . while proceedings are pending under any other petition . . . ." 53 P.S. § 2927(a).

### B. *Standard of Review and Relevant Law*

Issues of statutory interpretation are pure questions of law. Accordingly, this Court's standard of review is de novo and our scope is plenary. Focht v. Focht, 613 Pa. 48, 52, 32 A.3d 668, 670 (2011). This Commonwealth's statutes shall be interpreted under the rules set forth in 1 Pa.C.S. § 1901 et seq., unless their application would result in a construction that contravenes the intent of the General Assembly. 1 Pa.C.S. § 1901. The General Assembly is presumed to not intend a result that is absurd, unreasonable, or impossible to execute. 1 Pa.C.S. § 1922(1).

The meaning of words and phrases shall be discerned through the rules of grammar and in accordance with their common and approved usage. 1 Pa.C.S. § 1903. While a statute's plain language is generally the best indicator of its legislative intent, where there are issues of ambiguity, additional factors may be considered, including the

occasion and necessity for the statute, the circumstances under which the statute was enacted, the object to be attained, and the consequences of a particular interpretation. 1 Pa.C.S. § 1921(c); Malt Beverages Distribs. Ass'n v. Pennsylvania Liquor Control Bd., 601 Pa. 449, 974 A.2d 1144, 1149 (2009). While a statute's grammar and punctuation shall not control or affect its legislative intent, "[w]ords and phrases which may be necessary to the proper interpretation of a statute and which do not conflict with its obvious purpose and intent, nor in any way affect its scope and operation, may be added in the construction thereof." 1 Pa.C.S. § 1923(b)-(c).

An amended statute shall be viewed as merging into, and becoming one with, the original statute. 1 Pa.C.S. § 1953. In addition, the amendment shall be construed as if it had been part of the original statute. American Brake Shoe Co. v. Dist. Lodge 9 of Int'l Ass'n of Machinists, 373 Pa. 164, 173, 94 A.2d 884, 887 (1953). However, where a statute has been amended multiple times, the most recent amendment shall be read into the statute as previously amended and not into the statute as originally enacted. 1 Pa.C.S. § 1954. Statutes in pari materia (related to the same persons, things, or classes of things) shall be viewed together as one statute. 1 Pa.C.S. § 1932.

## C. *Analysis*

Appellant argues that based on the text alone, the population density and petition signature filing requirements must both be fulfilled before the ninety-day time limitation triggers with respect to the first upcoming election. The opposing parties maintain that the population density requirement alone starts the "at least ninety days after" clock, with the petition signature filing requirement serving as an additional prerequisite. Both sides cite the statutory history of 53 P.S. § 55207 and related statutes, and the public policy reasoning behind those statutes, in support of their positions.

### 1. *Statutory Interpretation*

Since 53 P.S. § 55207 has been amended three times, its plain text cannot be examined in isolation. Rather, it must be viewed sequentially, in light of its past iterations. This entails a two-step process in the case at bar. Without losing sight of the statute as a whole, the first amendment to the statute "shall be construed as merging into the original statute . . . and viewed [together] as one statute passed at one time." 1 Pa.C.S. § 1953. The second amendment, by extension, "shall be read into the original statute as previously amended and not . . . as originally enacted." 1 Pa.C.S. § 1954.

Abridged to its relevant portions, the original statute reads:

> At the first . . . election occurring at least ninety days after ascertainment, . . . that any township of the second class has a population of at least three hundred inhabitants to the square mile, the question whether such township of the second class shall become a township of the first class shall be submitted to the voters of the township . . . .

Act of Jun. 24, 1931, P.L. 1206, § 207. Its first amendment states:

> At the first general or municipal election occurring*, or at a special election held,* at least ninety days after the ascertainment . . . that any township of the second class has a population of at least three hundred inhabitants to the square mile, *and after the filing of a petition signed by at least five per centum of the registered voters of the township has been filed in the quarter sessions court*, the question whether such township of the second class shall become a township of the first class shall be submitted to the voters of the township . . . .

Act of Jul. 24, 1941, P.L. 502, §1 (emphasis in published statute to denote changes from original).

The original statute called for automatically adding the referendum question to the first ballot occurring no fewer than ninety days after formal ascertainment of the requisite population density. The first amendment made two notable additions: the petition signature filing requirement, which carried over to the present statute, and a special election option, which did not. Regardless, reading the original act and its first

amendment as one cohesive statute, the plain language supports Appellant's belief that the population density and petition signature filing requirements must both be fulfilled in order to activate the ninety-day time limitation. Removal of the special election option does not change this conclusion. The present statute reads:

> At the first . . . election occurring, at least ninety days after the ascertainment, . . . that any township of the second class has a population of at least three hundred inhabitants to the square mile, and after a petition signed by at least five per centum of the registered voters of the township has been filed . . . , the question of whether such township of the second class shall become a township of the first class shall be submitted to the voters of the township . . . .

53 P.S. § 55207.

The Commonwealth Court's finding that "'first election' relates only to the phrase with which it is immediately juxtaposed" belies the statute's plain language. In re Petition, 100 A.3d at 767. Rather, the Commonwealth Court's interpretation transforms "after . . . and after" into "after . . . *and provided*." Even assuming arguendo that the statute is ambiguous and warrants the consideration of other relevant factors, there are no additional related statutes or salient public policy concerns that undercut Appellant's argument. 53 P.S. § 55208 proves instructive. As noted by Appellant, second- to first-class township referendum questions that fail to pass by a majority vote may be resubmitted two years later "in the manner hereinbefore provided" in 53 P.S. § 55207. 53 P.S. § 55208. This contradicts the opposing parties' claim that such questions may only be submitted immediately after the census or special enrollment.

Appellant's citation to 53 P.S. §§ 55209-55209(a), which govern where a first-class township's population density later falls below 300 IPSM, is less on-point. Those statutes state that township voters may choose, via referendum, to revert to second-class status either upon petition between censuses or automatically after the next census.

There is nothing mutually exclusive about the language of those statutes and Appellees' reading of 53 P.S. § 55207. See Cozzone ex rel. Cozzone v. W.C.A.B., 621 Pa. 23, 39, 73 A.3d 526, 536 (2003) (unless otherwise indicated, statutes in pari materia shall not be read "as if one part operates to nullify, exclude or cancel the other").

Finally, at least two former second-class townships; namely Lower Macungie, Lehigh County and Whitemarsh, Montgomery County; submitted via voter petition, and approved via referendum, a change to first-class status well beyond the time limit as construed by the opposing parties.[12] Furthermore, when Whitemarsh Township's referendum petition was unsuccessfully challenged as lacking in affidavits, the Montgomery County Court of Quarter Sessions never considered the timeliness of its submission, which would be late according to the opposing parties. See Whitemarsh Tp. Referendum, 7 Pa. D. & C.2d 271, 274-75 (Pa.Quar.Sess. 1955) (reciting the statutory text without addressing the "at least ninety days after" language).[13]

## 2. *Public Policy*

The opposing parties' public policy arguments are similarly unavailing. While the Commonwealth Court's conclusion that a strict time limitation is necessary to ensure the "[ascertainment of population] . . . upon which the ballot question is based remains

---

[12] Once again, the Pocono Township referendum was timely under the lower courts' and opposing parties' reading of the statute. See supra n.9. For details regarding the Pocono and Lower Macungie referendums, see David Pierce, Drive in Pocono Township for First Class Status Gains Momentum, POCONO RECORD, Jul. 28, 2013, 12:01 AM, http://www.poconorecord.com/article/20130728/News/307280341.

[13] The plaintiff in Whitemarsh did not raise the issue of timeliness, and it is never the responsibility of the court to develop claims on behalf of a party. See Zeigler v. Church of the Brethren Gen. Bd., 570 Pa. 2, 3, 807 A.2d 872, 872 (2002) (noting it is "improper for court to act as advocate and sua sponte raise defense on behalf of party"). Nonetheless, the quarter sessions court would have presumably remarked on the absence of a claim that would otherwise prove fatal to the defendant's petition.

accurate when the matter is put to the voters" appears sensible in the abstract, actual census data safely dispels this concern.  In re Petition, 100 A.3d at 767.  In addition to Concord Township, whose population has experienced large, consistent gains since reaching 335.2 IPSM in 1970, seven other Delaware County townships (and former townships) have surpassed 300 IPSM in more recent years.[14]  The populations of Bethel and Thornbury, which respectively exceeded 300 IPSM in 1960 and 1970, have since grown by over 10% each census period.  While Marple and Newtown's populations have wavered since first reaching 300 IPSM in 1950, at their current population densities of 2,326.1 and 1,221.6 IPSM, these mature bedroom communities are safely past the point of reverting to their former agrarian states.  Even relatively rural Chadds Ford and Edgmont, which have population densities of 418.4 and 406.8 IPSM, would have to lose over 25% of their current populations (over 1,000 people) before returning to 300 IPSM.

Appellees' public policy arguments range from spare conclusory statements to extreme hypothetical scenarios.  Common sense refutes Appellees' notion that voters cannot consider second- to first-class referendum questions on "a rational and reasonable basis" unless they are rushed onto the ballot.  Appellees' Brief at 4. Appellees' claim that "[p]ossibly 3 to 4 municipal election cycles could have taken place in which the majority of voters elected supervisors only to have this mandate potentially overturned," implies that after an unspecified probationary period, elected officials gain an inalienable right to serve their local governments, irrespective of whether voters later decide that their officials, governmental organization, or both, require changing.  Id.[15]

---

[14] Census of Population and Housing, U.S. CENSUS BUREAU (Dec. 3, 2014), https://www.census.gov/prod/www/decennial.html.

[15] See 53 P.S. § 55208 (returns of election and effect thereof):

(continued…)

Moreover, there is nothing barring second class township officials from re-running if and when their governments reorganize. [16] Finally, while a spurned candidate could theoretically circulate a first-class township petition "for the sole purpose of unseating the duly elected supervisor," Appellees' assumption that such an act would win over voters who did not elect that candidate in the first place is dubious at best. Appellees' Brief at 4.

---

(…continued)

> . . . . If a majority of the votes cast at any such election shall be in favor of becoming a township of the first class, the government of the township of the first class shall be organized and become operative on the first Monday of January next succeeding such election, at which time the terms of the officers of the township of the second class shall cease and terminate.

Id.

[16] See 53 P.S. §§ 55225, 55226 (officers for new townships; election of commissioners in new townships):

> Whenever a new township of the first class shall be created . . . , the court of quarter sessions shall appoint five commissioners, and the other elective officers to which the township is entitled . . . . The officers so appointed shall hold their offices from the first Monday of January following the election creating such township until the first Monday of January following the municipal election at which officers of the township are elected as hereinafter provided.

53 P.S. § 55225.

> At the first municipal election following the creation of a township as hereinbefore provided, if such township has not been divided into wards, there shall be elected five township commissioners at large. Three of such commissioners shall be elected for terms of four years each, and tow [sic] for terms of two years each, from the first Monday of January next following such election. . . . .

53 P.S. § 55226.

### 3. *Additional Arguments*

Appellant's desired referendum question and Amici's stated interests are tenuously connected. Beyond what appear to be statements of educated conjecture, Amici fail to explain how inclusion of the referendum question would necessarily thwart the interests of voters or supersede the purpose of the Commission. Amici's general citation to the series of statutes that permits voter-approved home rule charter government study commissions is unavailing, as is the case law in support of their vague assertion that finding in favor of Appellant would "contravene[] the long standing policy of the Courts to protect the rights of voters whenever possible as well as their right to select their local form of government." Amici's Brief at 5.

The issue squarely before this Court is one of statutory interpretation. It is not, as Amici would like to believe, the public policy implications of allowing an allegedly competing referendum question on a future ballot that would, in all likelihood, have appeared on the November 2014 ballot but for these proceedings. For the same reasons this Court denied Amici's petition to intervene, Amici's claims require no further review. See Holt v. 2011 Legislative Reapportionment Comm'n, 620 Pa. 373, 396, 67 A.3d 1211, 1224-25 (2013) (amicus briefs raising issues not implicated by the parties warrant no consideration).

Intervenor's claim that Appellant's petition lacks sufficient signatures is also tangential to the issue before this Court, and therefore requires no further review. See Appeal of Municipality of Penn Hills, 591 Pa. 164, 169, 546 A.2d 50, 52 (1988) (stating that "the intervenor takes the litigation as he finds it . . . and . . . must raise claims in subordination to and in recognition of the propriety of the original action . . . .").

### III. *Conclusion*

For the reasons set forth above, we hold that pursuant to 53 P.S. § 55207, second-to first-class township referendum questions shall be submitted to voters at the first general or municipal election occurring at least ninety days after fulfilling **both** the population density ascertainment **and** petition signature filing requirements as set forth in the statute.   Accordingly, we reverse the order of the Commonwealth Court and remand to the trial court for further proceedings consistent with this opinion.

Messrs. Justice Eakin and Baer join the opinion.

Mr. Chief Justice Saylor files a dissenting opinion in which Madame Justice Todd joined.