Tawny L. CHEVALIER and Andrew Hiller, on Behalf of Themselves and All Others Similarly Situated, Appellees

v.

GENERAL NUTRITION CENTERS, INC. and General Nutrition Corporation, Appellants

Tawny L. Chevalier and Andrew Hiller, on Behalf of Themselves and All Others Similarly Situated

v.

General Nutrition Centers, Inc. and General Nutrition Corporation, Appellants

No. 1437 WDA 2016
No. 92 WDA 2017

Superior Court of Pennsylvania.

Argued September 19, 2017
Filed December 22, 2017

Allison R. Brown, Pittsburgh, and Robert W. Pritchard, Pittsburgh, for appellant.

Adrian N. Roe, Pittsburgh, and Michael D. Simon, Monroeville, for appellee.

BEFORE: MOULTON, J., SOLANO, J., and MUSMANNO, J.

OPINION BY MOULTON, J.:

In these consolidated appeals, General Nutrition Centers, Inc. and General Nutrition Corporation (together, "GNC") appeal from: (1) the September 6, 2016 judgment entered in the Allegheny County Court of Common Pleas in favor of Tawny L. Chevalier and Andrew Hiller, on behalf of themselves and all others similarly situated (collectively, "Employees"); and (2) the December 29, 2016 order granting Employees' petition for counsel fees and litigation costs. Employees sued GNC on the ground that GNC's method of calculating their overtime pay violated the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101–333.115. The trial court agreed and granted Employees' motion for summary judgment, entering judgment in Employees' favor in the amount of $1,378,494.77 plus interest. The court later granted Employees' petition for counsel fees and costs.

For the reasons that follow, we hold that: (1) GNC's method of calculating an employee's "regular rate" by dividing the employee's salary in a given week by the number of hours actually worked in that week did not violate the PMWA; and (2) GNC's payment of an overtime premium of only one-half the "regular rate" violated

the PMWA and its accompanying regulations. Accordingly, we affirm in part and reverse in part the trial court's judgment, vacate the order concerning fees and costs, and remand for further proceedings.

## I. Factual and Procedural History

The trial court summarized the background of this case as follows:

[Employees] worked as store managers, assistant managers, or senior store managers for [GNC] during the period between 2009 and April 2011. [Employees] were salaried employees whose weekly pay was the same no matter the number of hours worked. However, when a salaried employee worked more than forty hours in a workweek, GNC was also required to pay overtime for the hours worked over the forty-hour workweek.

Both parties agree that the PMWA requires a payment of at least one and one-half of the employee's "regular rate" for each hour worked in excess of forty hours. However, they disagree over how to calculate the employee's "regular rate."

The following illustration sets forth the method by which GNC calculates overtime: the salaried employee is paid $1,000 a week regardless of the number of hours worked. In a particular week, the salaried employee worked 50 hours. GNC divides the weekly pay ($1,000) by the number of hours worked (50). This produces a $20 amount which GNC treats as the employee's "regular rate." GNC divides the $20 amount by two, which produces a $10 amount. This represents 50% of the employee's "regular rate." GNC multiplies the $10 amount by the number of hours of overtime

(10).[1] This amount ($100) is paid as overtime. Thus, for this workweek, the salaried employee is paid $1,100.[2]

[1] GNC contends that through payment of salary, the salaried employee has already received regular pay for each of the 50 hours or, in other words, the salary covers the first 100% of the overtime. Thus, the employee is owed only an additional 50% of the wage as overtime.

[2] GNC's method of calculating overtime pay is called the fluctuating workweek [("FWW")] method of compensating overtime....

[Employees] contend that the "regular rate" should be calculated based on what is earned in a forty-hour workweek. Thus, the "regular rate" should be calculated by dividing the $1,000 weekly payment by forty hours. This produces a $25 per hour amount which [Employees] treat as their "regular rate."

[Employees] next multiply each hour of overtime by one and one-half of this dollar amount, which, according to [Employees], is consistent with the [Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., which uses] a forty-hour workweek. This produces an amount for ten hours of overtime of $375. Thus, for this workweek, the salaried employee is paid $1,375. This will be referred to as the *forty-hour method* of compensating salaried employees.

These two methods of calculating overtime produce very different results....[1]

. . .

There is a third construction that neither party has proposed. The "regular rate" will be based on a forty-hour week,

1. The trial court then set forth additional examples of the parties' proposed methods of calculating overtime wages, demonstrating that each yields a different result. *See* Trial Ct. Op., 10/20/14, at 2–4.

but for a salaried employee, the salary covers the first 100% of the overtime.[2] Trial Ct. Op., 10/20/14, at 1–4 (italics in original).

In 2014, GNC and Employees filed cross-motions for summary judgment, limited to the issue of whether GNC's use of the FWW method to calculate overtime compensation complies with the PMWA. On October 20, 2014, the trial court granted Employees' motion and denied GNC's motion, concluding:

> The General Assembly delegated to the [S]ecretary [of the Pennsylvania Department of Labor and Industry ("Secretary")] the responsibility for promulgating regulations interpreting "regular rate." The one sentence of the PMWA mandating overtime pay provides no guidance as to whether an employer is permitted to use the [FWW method] to calculate overtime pay for salaried employees. The regulations also provide no guidance.
>
> When the words of a statute are not clear, the intention of the General Assembly may be ascertained by considering the occasion and necessity for the statute, the mischief to be remedied, and the object to be attained. *Habecker v. Nationwide Ins. Co.,* [299 Pa.Super. 463] 445 A.2d 1222, 1224 (Pa. Super. 1982); 1 Pa.C.S.A. § 1921.
>
> The purpose of the portion of the PMWA governing overtime was to alter the behavior of employers. The goal was to cause employers to hire new workers in lieu of paying existing employees to work overtime by making overtime more expensive. A construction of the PMWA that allows the use of the [FWW] encourages the use of overtime. A method for calculating overtime that defines "regular rate" as the rate based on a forty-hour workweek creates a substantial financial incentive to hire new employees instead of paying for overtime. Consequently, GNC's use of the [FWW method] to calculate [Employees'] overtime pay violates the PMWA.

*Id.* at 21–22.

On December 16, 2014, Employees filed a motion for class certification, which GNC opposed. On July 15, 2015, the trial court granted Employees' motion, certifying a class of current and former GNC employees in Pennsylvania who were paid overtime compensation using the FWW method.

Thereafter, GNC requested additional discovery. On March 15, 2016, Employees filed a motion for a protective order objecting to the requested discovery, which the trial court granted. Also on March 15, 2016, Employees filed a motion to include commissions in the calculation of Employees' damages for unpaid overtime. The trial court granted the motion, concluding that GNC may not use the FWW method of calculating overtime as to Employees'

2. There is also a fourth construction, discussed in more detail later in this opinion. Under this construction, the "regular rate" fluctuates based on the number of hours worked in a given week, but for every hour over 40 worked in that week, the employee receives additional pay of one and one-half times the regular rate. In other words, the fluctuating "regular rate" component of the FWW method applies, but the one-half pay component does not. Using the trial court's illustration, the employee's "regular rate" would be the same as under the FWW method employed by GNC—weekly pay ($1000) divided by hours worked (50) produces a "regular rate" of $20 per hour. Under this fourth construction, however, the multiplier for overtime would be 1.5 rather than 0.5, yielding an overtime rate of $30 per hour. As a result, the employee's overtime pay would be $300 ($30 times 10 hours of overtime worked), for a total of $1,300 for the week, compared to $1,100 under GNC's method and $1,375 under Employees' preferred method.

commissions. *See* Trial Ct. Op., 5/11/16, at 3–5.

On September 6, 2016, the trial court entered final judgment as follows:

[T]his Court having previously determined that [GNC's] methodology of calculation of overtime was contrary to Pennsylvania law, and that a 1.5 multiplier was required to be applied to a "regular rate" based upon a 40–hour workweek in the calculation of overtime due the Class, and furthermore, having certified this matter as a Class Action on July 15, 2015, and upon being advised that the parties agree that the sum of $1,378,494.77 represents the correct calculation of the amount of overtime at issue in this case and that $362,286.08 represents the correct calculation of interest as of this date, and that [Employees'] claim for liquidated damages under the Wage Payment and Collection Law[, 43 P.S. §§ 260.1–260.12,] is hereby dismissed with prejudice, this Court hereby finds and concludes that this matter is ripe for the entry of judgment.

Thus, the Court hereby enters judgment in favor of [Employees] in the amount of $1,378,494.77 plus interest calculated at six percent (6%) per annum from the date of the non-payment of any overtime earned, or $362,286.08 for a total sum of $1,740,780.85 for interest accruing after the date of judgment at the statutory rate, plus costs and attorney's fees and incentive payments in amounts to be determined through further proceedings.

Trial Ct. Judgment, 9/6/16, at 1–2.[3] On September 29, 2016, GNC timely appealed from the judgment.

On September 15, 2016, Employees filed a petition for counsel fees, litigation costs,

and incentive payments, to which GNC filed a response. On December 30, 2016, the trial court awarded counsel fees in the amount of $360,000 and litigation costs in the amount of $8,000 but denied Employees' request for incentive payments. On January 17, 2017, GNC timely appealed from that order.

GNC raises the following issues on appeal:

A. Whether the [FWW] method of computing overtime compensation violates the [PMWA]; that is, whether under the PMWA: (i) the "regular rate" associated with a non-exempt employee's salary must be determined by dividing the employee's weekly salary by 40 (rather than by all hours worked); and (ii) the additional overtime compensation premium owed on that salary must be calculated at 1.5 times that "regular rate" for all hours worked over 40 (rather than 0.5 times the "regular rate").

B. Whether [Employees'] motion for class certification should have been granted, despite the fact that GNC presented evidence that putative class members had an agreement or understanding with GNC that their overtime would be calculated pursuant to 34 Pa. Code § 231.43(d)(3).

C. Whether 34 Pa. Code § 231.43(d)(3) permits GNC to calculate overtime compensation pursuant to an agreement or understanding with class members.

D. Whether under the PMWA: (i) the "regular rate" associated with a non-exempt employee's commission earnings must be determined by dividing the employee's weekly com-

---

3. In its September 6, 2016 judgment, the trial court expressly retained jurisdiction to deter-mine counsel fees, litigation costs, and incentive payments at a later date.

missions by 40 (rather than by all hours worked); and (ii) the additional overtime compensation premium owed on those commissions must be calculated at 1.5 times that "regular rate" for all hours worked over 40 (rather than 0.5 times the "regular rate").

E. Whether the trial court was authorized to apply a 1.5 contingency "multiplier" enhancement to the lodestar when calculating the award of attorney's fees, where the lodestar already reflected counsel's contingent risk.

GNC's Br. at 4–6 (trial court answers omitted).

GNC's "issues present pure questions of law, over which our standard of review is *de novo* and our scope of review is plenary." *In re Vencil*, 638 Pa. 1, 152 A.3d 235, 241 (2017); *see In re Concord Twp. Voters*, 632 Pa. 311, 119 A.3d 335, 341 (2015) ("Issues of statutory interpretation are pure questions of law."). Our review of a trial court's order awarding counsel fees is limited "to determining whether the trial court palpably abused its discretion." *Thunberg v. Strause*, 545 Pa. 607, 682 A.2d 295, 299 (1996).

## II. The FWW Method and the PMWA

The central issue in this case is whether GNC's use of the FWW method to calculate overtime compensation for salaried employees is consistent with section 4(c) of the PMWA, which provides in relevant part: "Employe[e]s shall be paid for overtime not less than one and one-half times the employe[e]'s regular rate as prescribed in regulations promulgated by the [S]ecretary." 43 P.S. § 333.104(c).

There are two components of the FWW method at issue. First, the FWW method determines the "regular rate" by dividing the employee's weekly salary by the total number of hours worked in that week. In other words, the "regular rate" for a given employee will fluctuate from week to week as the employee's hours fluctuate. This stands in contrast to the 40–hour method, advocated by Employees and adopted by the trial court, under which the "regular rate" remains constant from week to week. Second, the FWW method, as employed by GNC, pays the employee in question an additional overtime premium of one-half of the "regular rate" for a given week for each hour over 40 worked by the employee in that week, as opposed to one and one-half times the "regular rate."

### A. The Positions of the Parties

GNC's argument proceeds as follows: (1) In 1942, the United States Supreme Court held in *Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942), that the FWW method of calculating a salaried employee's "regular rate," and the resulting overtime payments, was lawful under the FLSA. (2) In 1968, the Pennsylvania General Assembly adopted the "regular rate" terminology in the PMWA's overtime provision. (3) Pennsylvania case law instructs that, unless a contrary intent appears, when a Pennsylvania statute tracks the language of a federal statute, Pennsylvania courts should consult federal authority for guidance in ascertaining the meaning of the term in question. (4) Nothing in the text of the PMWA suggests that the General Assembly intended to give a meaning to "regular rate" different from that established under the FLSA. (5) While the PMWA does authorize the Pennsylvania Department of Labor and Industry ("Department") to promulgate regulations defining "regular rate," and the Department could have promulgated a regulation defining "regular rate" to prohibit the FWW method, it has not done so, and nothing in

the PMWA regulations that the Department has adopted evinces an intent to bar the FWW method.

Employees counter that important differences between the PMWA and the FLSA belie GNC's wholesale-FLSA-incorporation argument. According to Employees, those differences, along with policy statements contained in the preamble to the PMWA, demonstrate that the PMWA was intended to provide greater protection to employees in Pennsylvania than that afforded by the FLSA. In particular, Employees point to the language in the PMWA that, as both parties concede, authorizes the Department to define "regular rate" differently (and more favorably to employees) than does federal law. And while Employees admit that no Pennsylvania regulation expressly **prohibits** the FWW method for salaried employees, they emphasize that Pennsylvania has not promulgated a regulation **authorizing** the FWW method. To support the significance of that omission, Employees point out that the Department has promulgated a regulation that expressly permits a version of the FWW method, but only for employees paid at a flat rate per day or per job. *See* 34 Pa. Code § 231.43(b). They contend that the Department's failure to adopt a similar regulation for salaried employees, as exists in the FLSA regulations, is telling. Finally, Employees argue that the FWW method runs directly counter to what they contend is a fundamental purpose of the PMWA—promoting greater employment by incentivizing employers to hire more workers rather than incurring substantial costs in paying overtime to existing workers.

As noted above, both parties agree that: the PMWA authorizes the Secretary of the Department to promulgate regulations defining the term "regular rate" as it applies to salaried employees; the Secretary's authority would support a regulation either permitting or prohibiting the FWW method for calculating overtime pay for such employees; and the Secretary has not exercised that authority in either direction. In essence, the difference between the parties' positions is that GNC argues that absent an express prohibition, the FWW method is permissible, while Employees argue that absent an express authorization, the FWW method is impermissible.

### B. The Pennsylvania Department of Labor and Industry

On September 22, 2017, shortly after oral argument, this Court issued an order requesting (but not requiring) the views of the Department concerning "whether the PMWA authorizes an employer to use the [FWW] method to calculate overtime compensation for salaried employees." Super. Ct. Order, 9/22/17, at 2. The order further provided:

> In particular: (1) is the "regular rate" referenced in Section 333.104(c) of the PMWA properly determined by dividing the employee's weekly salary by all hours worked or by 40; and (2) for hours worked over 40, is the overtime to be paid to salaried employees an additional one and one-half times the regular rate, or an additional one-half times the regular rate.

*Id.*

The request was based on several factors, including the Department's general responsibility for administering and enforcing the PMWA. Indeed, had Employees in this case so chosen, they could have filed a complaint with the Department's Bureau of Labor Law Compliance challenging the legality of GNC's use of the FWW method for calculating overtime.[4]

4. *See* 43 P.S. § 333.113; *see also* Pa. Dep't of Labor & Indus. Minimum Wage and Overtime

Had Employees done so, the Department would have been authorized to "take an assignment of such wage claim, in trust for the assigning worker and ... bring any legal action necessary to collect such claim." 43 P.S. § 333.113.

In addition, GNC supports its interpretation of the PMWA by reference to a letter issued in 1998 by a deputy chief

Complaint Form, available at http://www.dli. pa.gov/Individuals/Labor-Management Relations/llc/minimum-wage/Pages/Minimum-Wage-Complaint-Form.aspx (last visited Dec. 1, 2017).

5. The employer's name has been redacted from the copy of the 1998 Letter in the certified record. We note that GNC does not claim that it was the employer in question, or that it somehow acted in reliance on the letter in formulating its overtime policy. We also note that the copy provided to this Court is, in parts, illegible.

6. The 1998 Letter provides in relevant part:

The major issue which you did not raise, and which I believe could be at the center of this dispute, is whether Pennsylvania recognizes a fluctuating work week. In this regard, overtime is computed under paragraph "3.2a" of the employment contract using base earnings for the week, and a variable number of hours worked. This arrangement is permitted under the FLSA. [Illegible citation omitted.] However, a federal court decision suggests that such an arrangement is not permitted under Pennsylvania law. *Friedrich v. U.S. Computer Services*, 833 F.Supp. 470 (E.D. Pa. 1993). The Department ... did not participate in this case and it has only been within the last year that the ramifications of *Friedrich* have been called to our attention. Previously, we had assumed that a fluctuating work week was permitted under Pennsylvania law, although this issue never appears to have been the subject of an in-depth analysis. We have yet to issue any pronouncements regarding *Friedrich*, subsequent to being made aware of its ramifications.

A federal court's analysis of state law, of course, is not binding on the state courts. *Lilley v. Johns–Manville, Corp.*, 408 Pa.Su-

counsel in the Department. GNC's Br. at 36, 40–41; *see* Ltr. from R. Lengler to J. Harris, 11/12/98 ("1998 Letter"). The 1998 Letter appears to be a response to an inquiry from an attorney for an employer; the inquiry itself is not in the record.[5] While the letter suggests that the inquiry did not raise the FWW issue, the letter did offer some general observations about that method of calculating overtime.[6]

per. 83, 596 A.2d 203 (1991). Therefore, *Friedrich* is not precedent in the strictest sense of the term. This brings us to the question of whether we would [illegible] *Friedrich*. At this point, without having been called upon to prosecute an actual wage claim, I would venture to say that if a plausible construction could be made of the [P]MWA and/or its regulations that would allow a fluctuating workweek on the same terms as the FLSA, this agency would embrace such a construction. This is because we would be inclined to interpret our law on the same plane as federal law—as opposed to advocating higher standards than those imposed by federal law.

In this regard, I am hesitant to place the same weight, as the *Friedrich* court did, on the absence of state rulemaking adopting a regulation equivalent to 29 C.F.R. § 778.114. The federal regulation, according to the source note in the Code of Federal Regulations, was adopted January 26, 1968. While it is true, as the *Friedrich* court observed, that the Pennsylvania minimum wage and overtime regulations were promulgated in 1977, I am unable to assume (as the *Friedrich* court apparently did) that these regulations were adopted from scratch. Rather, the 1977 rulemaking took existing (and presumably pre-Commonwealth Documents Law) regulations and "reviewed" them, "improved" upon them and revised them to eliminate "inconsistencies between the existing regulations and the act, as amended." 7 Pa.B.25 (Jan. 1, 1977). While the preambles accompanying both the proposed and the final rulemaking are meager by today's standards, it is important to realize that prior to the enactment of the present-day [P]MWA, there was a statute on the books known as the "Minimum Wage Act of 1961," act of September 15, 1961, P.L. 1313, 43 P.S. §§ 333.1–

On October 11, 2017, the Department responded to this Court's order as follows:

> The [Department] respectfully responds to the Superior Court's September 22, 2017 Order requesting that the Department provide its views regarding whether the [PMWA] authorizes an employer to use the [FWW] method to calculate overtime compensation for salaried employees. While the Department appreciates the opportunity to comment on the important issue under consideration by the Court, the Department must respectfully decline the Court's invitation. The subject matter of the Court's request implicates not merely an interpretation of law but policy choices among competing positions as to how best to effectuate the intent of the legislature. The development of guidance to implement statutory law generally involves public notice and comment, stakeholder outreach, and coordination within key Commonwealth agencies. Accordingly, there is a significant concern that articulation of a formal position on this issue may be construed as agency rule-making in a manner inconsistent with the Commonwealth's regulatory review process. While the Department is unable to offer its views, the Department nonetheless looks forward to the Court's guidance on

333.11 (repealed). That statute, in turn, contained authority for the adoption of regulations. 43 P.S. §§ 333.9(a), 333.22 (repealed). Accordingly, there is a possibility that the 1977 regulations passed under [P]MWA were substantially a re-codification of regulations promulgated under the 1961 act before the federal government's adoption of 29 C.F.R. § 778.114.

Second, it [is] obvious that this agency has not attempted rulemaking under the [P]MWA on the same magnitude as the federal Wage and Hour Division has under the FLSA. To do so, seemingly, would require the filling of possibly two volumes of the *Pennsylvania Code.* By the same token, Pennsylvania has not been nearly as vigilant in updating its regulations; rather it appears that the last substantial changes to the regulations occurred in 1979. In short, I am reluctant to infer a conscious intention to reject the idea of a fluctuating workweek simply based on the absence of regulatory language on the state level similar to 29 C.F.R. § 778.114.

The next step is the analysis to determine whether support for a fluctuating workweek can be derived from the [P]MWA or the existing regulations. In *Jay R. Reynolds, Inc. v. Department of Labor and Industry,* 661 A.2d 494, 497 (Pa. Cmwlth. 1995), the court recognized that an agency may render (and rely on) interpretive law as long as the interpretive rule tracks the meaning of the statute that it interprets, and does not expand the plain meaning of that statute. In my view, the concept of a fluctuating work-week can be accommodated under existing law. Not only is there no language forbidding a fluctuating workweek, or defining 40 hours as the standard for determining the employer's regular rate for overtime purposes, but the language of 34 Pa.Code § 231.43(b) seems to support this concept. That regulation requires that an employee's regular rate be calculated by total hours actually worked in the workweek for employees paid by the day or the job. The logical extension of this methodology, in my view, encompasses the fluctuating workweek by using total hours actually worked to determine the actual rate. Indeed, the fluctuating workweek simply gives recognition to the fact that some employees are paid a fixed salary without regard to hours, and quite logically allows their regular rate to be determined by using the hours actually worked, and not an artificial standard. The mandating of a 40-hour standard for non-exempt employees paid salary, when determining their regular rate, would appear to be the more expansive construction of the statute, and the one requiring the specific adoption of regulations. Consequently, I believe that [the Department] will embrace the fluctuating workweek, since the [P]MWA and existing regulations support such an interpretation, and because Pennsylvania employers will not be subjected to greater burdens than those imposed by federal law through, at best, a latent discrepancy between state and federal regulations.

1998 Ltr. at 5–8.

the contours of the law on this significant issue of employment law.

Ltr. from M. Sajer to N. Corsetti, 10/11/17, at 1–2.

Both GNC and Employees submitted briefs in response to the Department's October 11, 2017 letter. Not surprisingly, each party argues that the Department's response supports its respective position. GNC contends that the Department's letter: (1) confirms that existing regulations do not address, one way or the other, the validity of the FWW method under the PMWA; (2) confirms that the FWW method implicates competing policy considerations best addressed by either the General Assembly or the Department through the formal rulemaking process; and (3) did not repudiate the Department's earlier statement (in the 1998 Letter) affirming the validity of the FWW method. GNC's Br. in Resp. to Dep't Ltr. at 2–16. Employees, in contrast, argue that the Department's letter: (1) effectively rejects the "unofficial observations" in the 1998 Letter; and (2) supports Employees' view that absent express authorization for the FWW method in either the PMWA itself or in duly enacted regulations, use of that method is prohibited. Employees' Resp. to Dep't Ltr. at 1–4.

### C. Analysis

We must measure both aspects of GNC's FWW method of calculating overtime against the PMWA: (1) calculation of the "regular rate" by considering all hours worked in a week (as opposed to 40 hours); and (2) paying overtime beyond salary at one-half the regular rate (as opposed to one and one-half times that rate). To assess the parties' arguments, and to determine the meaning of the relevant provi-

sions of the PMWA and its accompanying regulations, we begin by examining the history of the overtime provisions in both the FLSA and the PMWA.

### 1. History of the FLSA and the PMWA Overtime Provisions

### a. The FLSA Overtime Provision and Regulations

In 1938, the United States Congress enacted the FLSA. Section 7(a)(1) of the FLSA provides:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours[7] unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

In 1942, the United States Supreme Court decided *Missel*. At issue in *Missel* was the application of the FLSA's overtime provision "to an employee working irregular hours for a fixed weekly wage" and "the meaning of the words 'the regular rate at which he is employed.'" 316 U.S. at 573, 579, 62 S.Ct. 1216 (quoting 29 U.S.C. § 207(a)(1)). In construing section 7(a)(1) of the FLSA, the Supreme Court concluded that if an employee is paid a fixed weekly salary for "variable or fluctuating hours," the "regular rate" was to be calculated by dividing the weekly salary by the hours worked that particular week. 316

---

**7.** This provision originally stated "forty-four hours," *see Missel*, 316 U.S. at 579, 62 S.Ct.

1216, but was later amended to "forty hours."

U.S. at 580, 62 S.Ct. 1216. The Supreme Court recognized that this method would produce a different "regular rate" for each week[8] and that "the longer the hours the less the rate and the pay per hour." *Id. Missel* also has been understood to hold that the employer's overtime obligation could be satisfied by adding an overtime premium equal to one-half the regular rate for each hour worked, on the theory that the employee's salary already covered the employee's "straight time" for hours worked over 40. *See Lalli v. Gen. Nutrition Ctrs., Inc.*, 814 F.3d 1, 3 (1st Cir. 2016) (after citing *Missel*, stating that "[o]nly an additional 'half' is required to satisfy the [FLSA] because the 'time' in 'time-and-a-half' has already been compensated under the salary arrangement").

Following *Missel*, in 1950, the United States Department of Labor ("DOL") adopted a federal regulation expressly authorizing both aspects of the FWW method of overtime compensation under the FLSA.[9] The FWW regulation is now codified at 29 C.F.R. § 778.114(a), which states:

An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the [FLSA] if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay. Since the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, **the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week. Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement.**

29 C.F.R. § 778.114(a) (emphasis added).[10]

In 1968, the DOL revised the FWW regulation, adding subsections (b) and (c) and amending subsection (a).[11] In 2011, the

---

8. The *Missel* Court explained that the rate "is regular in the statutory sense inasmuch as the rate per hour does not vary for the entire week, though week by week the rate varies with the number of hours worked." 316 U.S. at 580, 62 S.Ct. 1216.

9. The regulation was codified at 29 C.F.R. § 778.3(b)(5) until 1965, when it was redesignated as 29 C.F.R. § 778.114(a).

10. The above-quoted text, most recently amended on April 5, 2011, appears in the current version of the regulation.

11. Subsection (b) and (c) of the regulation provide:

(b) The application of the principles above stated may be illustrated by the case of an employee whose hours of work do not customarily follow a regular schedule but

DOL again revised the FWW regulation to incorporate amendments to the FLSA; the 2011 amendments became effective on May 5, 2011 and are still in effect.[12]

### b. The PMWA Overtime Provision and Regulations

In 1968, the Pennsylvania General Assembly enacted the PMWA, initially covering only those employees not already covered by the FLSA.[13] The PMWA, which in many respects mirrors the FLSA, was "designed to protect employees who do not have real bargaining power." *Cerutti v. Frito Lay, Inc.*, 777 F.Supp.2d 920, 925 (W.D.Pa. 2011) (quoting *Pa. Dep't of Labor & Indus. v. Stuber*, 822 A.2d 870, 873 (Pa.Cmwlth. 2003), *aff'd*, 580 Pa. 66, 859 A.2d 1253 (2004)). Section 4(c) of the PMWA begins by using language, including "regular rate," that closely tracks section 7(a) of the FLSA. *Compare* 43 P.S. § 333.104(c) ("Employe[e]s shall be paid for overtime not less than one and one-half times the employe[e]'s regular rate . . ."), *with* 29 U.S.C. § 207(a)(1) (requiring payment for overtime "at a rate not less than one and one-half times the regular rate at which [the employee] is employed"). Section 4(c) then breaks from the FLSA by

vary from week to week, whose total weekly hours of work never exceed 50 hours in a workweek, and whose salary of $600 a week is paid with the understanding that it constitutes the employee's compensation, except for overtime premiums, for whatever hours are worked in the workweek. If during the course of 4 weeks this employee works 40, 37.5, 50, and 48 hours, the regular hourly rate of pay in each of these weeks is $15.00, $16.00, $12.00, and $12.50, respectively. Since the employee has already received straight-time compensation on a salary basis for all hours worked, only additional half-time pay is due. For the first week the employee is entitled to be paid $600; for the second week $600.00; for the third week $660 ($600 plus 10 hours at $6.00 or 40 hours at $12.00 plus 10 hours at $18.00); for the fourth week $650 ($600 plus 8 hours at $6.25, or 40 hours at $12.50 plus 8 hours at $18.75).

(c) The [FWW] method of overtime payment may not be used unless the salary is sufficiently large to assure that no workweek will be worked in which the employee's average hourly earnings from the salary fall below the minimum hourly wage rate applicable under the [FLSA], and unless the employee clearly understands that the salary covers whatever hours the job may demand in a particular workweek and the employer pays the salary even though the workweek is one in which a full schedule of hours is not worked. Typically, such salaries are paid to employees who do not customarily work a regular schedule of hours and are in amounts agreed on by the parties as adequate straight-time compensation for

long workweeks as well as short ones, under the circumstances of the employment as a whole. Where all the legal prerequisites for use of the [FWW] method of overtime payment are present, the [FLSA], in requiring that "not less than" the prescribed premium of 50 percent for overtime hours worked be paid, does not prohibit paying more. On the other hand, where all the facts indicate that an employee is being paid for his overtime hours at a rate no greater than that which he receives for nonovertime hours, compliance with the [FLSA] cannot be rested on any application of the [FWW] overtime formula.

29 C.F.R. § 778.114(b), (c).

12. For a more detailed discussion of the history of the FLSA's overtime provision and its accompanying regulations, *see generally* John F. Lomax, Jr., *The Attack on the Fluctuating Workweek Method*, 30 Am. Bar Ass'n J. Labor & Empl. L. 347 (2015).

13. Before 1988, the definition of "employee" in the PMWA excluded any individual who

is subject to the [FLSA] . . . Provided, That this limitation shall not be deemed to exclude any individuals from entitlement to the amount of weekly wages due them (with respect to regular time pay and overtime pay where applicable) under any statute of the Commonwealth of Pennsylvania or any valid regulation or order thereunder on the effective date of this act.

43 P.S. § 333.103, Hist. & Stat. Notes (Act 1988).

directing the Secretary of the Department to promulgate regulations implementing the overtime requirement. *See* 43 P.S. § 333.104(c) ("as prescribed in regulations promulgated by the [S]ecretary").

Further, in the PMWA's "Declaration of Policy" provision, the General Assembly stated:

Employe[e]s are employed in some occupations in the Commonwealth of Pennsylvania for wages unreasonably low and not fairly commensurate with the value of the services rendered. Such a condition is contrary to public interest and public policy commands its regulation. Employe[e]s employed in such occupations are not as a class on a level of equality in bargaining with their employers in regard to minimum fair wage standards, and "freedom of contract" as applied to their relations with their employers is illusory.

43 P.S. § 333.101.

In 1977, the Department adopted regulations interpreting the PMWA's overtime provision, which provide in full:

### § 231.41. Rate.

Except as otherwise provided in section 5(a)–(c) of the [PMWA] (43 P. S. § 333.105(a)–(c)), each employee shall be paid for overtime not less than 1–1/2 times the employee's regular rate of pay for all hours in excess of 40 hours in a workweek.

### § 231.42. Workweek.

The term workweek shall mean a period of 7 consecutive days starting on any day selected by the employer. Overtime shall be compensated on a workweek basis regardless of whether the employee is compensated on an hourly wage, monthly salary, piece rate or other basis. Overtime hours worked in a workweek may not be offset by compensatory time off in any prior or subsequent workweek.

### § 231.43. Regular rate.

[ (a) ] For purposes of these §§ 231.41–231.43 (relating to overtime pay), the regular rate at which an employee is employed shall be deemed to include all remuneration for employment paid to or on behalf of the employee, but it shall not be deemed to include the following:

(1) Sums paid as gifts, payments in the nature of gifts made at Christmas time or on other special occasions as a reward for service, the amounts of which are not measured by or dependent on hours worked, production or efficiency.

(2) Payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work or other similar cause, reasonable payments for traveling expenses or other expenses incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer, and other similar payments to an employee which are not made as compensation for the employee's hours of employment.

(3) Sums paid in recognition of services performed during a given period if:

(i) Both the fact that payment is to be made and the amounts of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement or promise causing the employee to expect such payments regularly.

(ii) The payments are made pursuant to a bona fide profit-sharing

plan or trust or bona fide thrift or savings plan without regard to hours of work, production or efficiency.

(iii) The payments are talent fees paid to performers, including announcers on radio and television programs.

(4) Contributions irrevocably made by an employer to a trustee or third person under a bona fide plan for providing old-age, retirement, life, accident or health insurance or similar benefits for employees.

(5) Extra compensation provided by a premium rate for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of 8 in a day or in excess of the maximum workweek applicable to the employee under § 231.41 (relating to rate) or in excess of the normal working hours or regular working hours of the employee, as the case may be.

(6) Extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than 1 1/2 times the rate established in good faith for like work performed in nonovertime hours on other days.

(7) Extra compensation provided by a premium rate paid to the employee in pursuance of an applicable employment contract or collective bargaining agreement for work outside of the hours established in good faith by the contract or agreement as the basic, normal or regular workday not exceeding 8 hours or workweek not exceeding the maximum workweek applicable to the employee under § 231.41 (relating to rate), where the premium rate is not less than 1 1/2 times the rate established in good faith by the contract or agreement for like work performed during the workday or workweek.

(b) If the employee is paid a flat sum for a day's work or for doing a particular job without regard to the number of hours worked in the day or at the job and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at the day rates or job rates in the workweek and dividing by the total hours actually worked. He is then entitled to extra half-time pay at this rate for hours worked in excess of 40 in the workweek.

(c) No employer may be deemed to have violated these §§ 231.41–231.43 (relating to overtime pay) by employing an employee for a workweek in excess of the maximum workweek applicable to the employee under § 231.41 (relating to rate) if the employee is employed under a bona fide individual contract or under an agreement made as a result of collective bargaining by representatives of employees, if the duties of the employee necessitate substantially irregular hours of work. For example, where neither the employee nor the employer can either control or anticipate with a degree of certainty the number of hours the employee must work from week to week, where the duties of the employee necessitate significant variations in weekly hours of work both below and above the statutory weekly limit on nonovertime hours, or where the substantially irregular hours of work are not attributable to vacation periods, holidays, illness, failure of the employer to provide sufficient work, or other similar causes, and the contract or agreement:

(1) Specifies a regular rate of pay of not less than the minimum hourly rate and compensation at not less than 1 1/2 times the rate for hours worked in excess of the maximum workweek.

(2) Provides a weekly guaranty of pay for not more than 60 hours based on the rates so specified.

(d) No employer may be deemed to have violated these §§ 231.41–231.43 by employing an employee for a workweek in excess of the maximum workweek applicable to the employee under § 231.41 if, under an agreement or understanding arrived at between the employer and the employee before performance of the work, the amount paid to the employee for the number of hours worked by him in the workweek in excess of the maximum workweek applicable to the employee under § 231.41:

(1) In the case of an employee employed at piece rates, is computed at piece rates not less than 1 1/2 times the bona fide piece rates applicable to the same work when performed during nonovertime hours.

(2) In the case of an employee's performing two or more kinds of work for which different hourly or piece rates have been established, is computed at rates not less than 1 1/2 times the bona fide rate applicable to the same work when performed during nonovertime hours.

(3) Is computed at a rate not less than 1 1/2 times the rate established by the agreement or understanding as the basic rate to be used in computing overtime compensation thereunder; and if the average hourly earnings of the employee for the workweek, exclusive of payments described in subsection (a)(1)–(7), are not less than the minimum hourly rate required by applicable law and if extra overtime compensation is properly computed and paid on other forms of additional pay required to be included in computing the regular rate.

(e) Extra compensation paid as described in subsection (a)(5)–(7) shall be creditable toward overtime compensation payable under these §§ 231.41–231.43 (relating to overtime pay).

(f) No employer may be deemed to have violated these §§ 231.41–231.43 by employing an employee of a retail or service establishment for a workweek in excess of 40 hours if:

(1) The regular rate of pay of the employee is in excess of 1 1/2 times the minimum hourly rate applicable.

(2) More than half of the employee's compensation for a representative period, not less than 1 month, represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

34 Pa. Code §§ 231.41–231.43.

Subsequently, in 1988, the General Assembly amended the PMWA to expand the definition of "employee" to "include[ ] any individual employed by an employer." 43 P.S. § 333.103(h). With that amendment, the PMWA applied to all employees in Pennsylvania, including those who are subject to the FLSA. As the Pennsylvania Supreme Court observed, the FLSA thus became the "floor" rather than the "ceiling" to worker protection in Pennsylvania. *See Bayada Nurses, Inc. v. Pa. Dep't of Labor & Indus.*, 607 Pa. 527, 8 A.3d 866, 883 (2010) (recognizing that FLSA "establishes only a national floor under which wage protections cannot drop" and "does

not prohibit state regulation of wages and overtime if the state's standards are more beneficial to workers").

The PMWA's overtime provision was most recently amended in 2012. Section 4(c) of the PMWA now provides:

Employe[e]s shall be paid for overtime not less than one and one-half times the employe[e]'s regular rate as prescribed in regulations promulgated by the secretary: Provided, That students employed in seasonal occupations as defined and delimited by regulations promulgated by the secretary may, by such regulations, be excluded from the overtime provisions of this act: And provided further, That the secretary shall promulgate regulations with respect to overtime subject to the limitations that no pay for overtime in addition to the regular rate shall be required except for hours in excess of forty hours in a workweek. An employer shall not be in violation of this subsection if the employer is entitled to utilize, and acts consistently with, section 7(j) of the [FLSA], 29 U.S.C. § 207(j)[ ] and regulations promulgated under that provision.[14]

43 P.S. § 333.104(c).

### 2. Federal Cases Addressing Overtime under the PMWA

No Pennsylvania appellate court has addressed the relationship between the FWW method of calculating overtime and section 4(c) of the PMWA and its accompanying regulations. However, several federal district courts in Pennsylvania have done so. *See, e.g., Verderame v. RadioShack Corp.*, 31 F.Supp.3d 702, 709–10 (E.D.Pa. 2014) (holding that employer violated PMWA by not compensating employee for overtime at one and one-half times basic rate as set forth in employee's compensation plan); *Foster v. Kraft Foods Global, Inc.*, 285 F.R.D. 343, 348 (W.D.Pa. 2012) (holding that payment of overtime under FWW method at one-half times regular or basic rate, as opposed to one and one-half times, was impermissible under PMWA); *Cerutti*, 777 F.Supp.2d at 945 (holding that FWW method of overtime calculation is impermissible under PMWA).

Each of these cases involved the interpretation and application of 34 Pa. Code § 231.43(d)(3), the PMWA regulation that addresses situations in which the employer and the employee have reached an agreement as to overtime pay before performance of the work in question. Subsection (d)(3) states that such agreements are permissible under the PMWA as long as, among other things, the overtime rate "[i]s computed at a rate not less than 1 1/2 times the rate established by the agreement or understanding as the basic rate to be used in computing overtime compensation thereunder." *Id.* While the case before us does not involve the application of subsection (d)(3),[15] the analysis in these federal cases is nonetheless instructive.[16]

---

14. Section 7(j) of the FLSA applies to employees of a hospital or other establishment engaged in the care of the sick, the aged, or the mentally ill. *See* 29 U.S.C. § 207(j). The General Assembly added the last sentence of section 4(c) of the PMWA in 2012 in response to court decisions prohibiting the "8/80 approach" for health care workers. *See Verderame v. RadioShack Corp.*, 31 F.Supp.3d 702, 708 n.4 (E.D.Pa. 2014).

15. As discussed more fully in part III of this opinion, GNC has waived its reliance on subsection (d)(3) of the regulation in this appeal.

16. "Although this Court is not bound by federal court opinions interpreting Pennsylvania law, we may consider federal cases as persuasive authority." *Rancosky v. Wash. Nat'l Ins. Co.*, 130 A.3d 79, 96 n.23 (Pa.Super. 2015), aff'd, —— Pa. ——, 170 A.3d 364 (2017).

For our purposes, the chief issue in each case was whether the employer's payment of an overtime premium of one-half the "basic rate," rather than one and one-half times that rate, was consistent with Pennsylvania law. *See Verderame*, 31 F.Supp.3d at 707–08; *Foster*, 285 F.R.D. at 347–48; *Cerutti*, 777 F.Supp.2d at 943–45. The most recent of these cases, *Verderame*, is illustrative. There, RadioShack applied the same FWW method as did GNC, using the employees' weekly salary divided by hours actually worked (rather than 40) to arrive at the regular rate, and then paying an overtime rate of one-half that regular rate. 31 F.Supp.3d at 703.[17] RadioShack argued that this method not only complied with the FLSA but also was consistent with the PMWA. *Id.* at 705. While recognizing that subsection (d)(3) of 31 Pa. Code § 231.43 states that employees must be paid for overtime "at a rate not less than 1 1/2 times the ... basic rate," RadioShack contended that because its employees' weekly salaries already covered the straight time for overtime hours, paying them an additional one-half the basic rate for those hours was consistent with both subsection (d)(3) and the PMWA. *Id.* at 706–07.

Judge Mitchell S. Goldberg, after surveying *Foster* and *Cerutti*, held that subsection (d)(3) does not permit an overtime payment of only one-half the regular rate:

> While RadioShack's compensation plan may be permissible under the FLSA, it cannot be reconciled with the plain language of § 231.43(d)(3). Indeed, while an overtime rate of "one half" is clearly stated in other regulatory language, it is conspicuously absent from section 231.43(d). As the court in *Foster*

noted, "[h]ad the Pennsylvania regulatory body wished to authorize one-half time payment under section 231.43(d), it certainly knew how to do so." *Foster*, 285 F.R.D. at 345 (commenting on the identical language of 34 Pa.Code § 231.43(b) and 29 C.F.R. § 778.112). Although section 231.43(b) pertains to a flat sum for a day's work, and not as here, a fluctuating workweek, the language used in each certainly illustrates the regulatory bodies' willingness to set out "one half" overtime standards. These two sections provide, in relevant part:

> If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job ... his regular rate is determined by totaling all the sums received at the day rates or job rates in the workweek and dividing by the total hours actually worked. He is then entitled to *extra half-time pay at this rate* for hours worked in excess of 40 in the workweek.

29 C.F.R. § 778.112 (emphasis added); 34 Pa.Code § 231.43(b). I thus conclude that the absence of the "half-time" language in section 231.43(d)(3) and the inclusion of "not less than 1 1/2 times" is indicative of Industrial Board of the [Department's] intent in drafting the regulations at issue.

*Id.* at 707.

Notably, Judge Goldberg's opinion in *Verderame*, like *Foster* and *Cerutti*, assumed that the first part of the FWW method—determining the regular rate by dividing weekly salary by hours actually

---

17. Subsection (d)(3) uses the term "basic rate" to refer to "the rate established by the agreement or understanding [between the parties] ... to be used in computing overtime compensation thereunder." 34 Pa. Code § 231.43(d)(3). RadioShack, in its compensation plan, used the term "regular rate" rather than, and as an apparent synonym for, "basic rate." *See Verderame*, 31 F.Supp.3d at 703 (quoting compensation plan).

worked—was consistent with the PMWA. *See Foster*, 285 F.R.D. at 347 & n.4; *Cerutti*, 777 F.Supp.2d at 923 (describing both aspects of the FWW method employed by Frito Lay); *id.* at 945 (holding that Frito Lay "cannot comply with [34 Pa. Code § 231.43(d)(3) ] without paying plaintiffs at an [overtime] rate of one and one-half times the plaintiffs' regular rate"). Employees in this case, while placing significant weight on *Verderame, Foster,* and *Cerutti, see* Employees' Br. at 4, 5, 22, 35, 37, 40, 54, fail to note this aspect of those cases.

### 3. Using Hours Actually Worked to Establish the "Regular Rate"

We now address the first aspect of GNC's FWW method—calculating the "regular rate" by dividing an employee's salary in a given week by the number of hours the employee actually worked that week. For any week in which overtime is due (that is, any week in which the employee works more than 40 hours), this method establishes a lower regular rate than would the 40–hour method advocated by Employees.[18] The question before us is whether this method is consistent with the PMWA, or whether, as Employees contend, the term "regular rate" in the PMWA means weekly salary divided by 40 hours, no matter how many hours were actually worked.

We face this question against the backdrop of a series of choices made by others. First, the General Assembly chose to use the term "regular rate" in the overtime provision of the PMWA, a term plainly borrowed from the FLSA. Second, the General Assembly chose not to define the term, instead delegating that responsibility to the Secretary. And third, the Secretary (or more accurately, a series of Secretaries) has thus far chosen not to promulgate a regulation defining "regular rate." [19]

 Interpreting the term "regular rate" in the PMWA requires us to perform the familiar task of statutory interpretation. Statutory interpretation is a question of law over which our standard of review is de novo, and our scope of review plenary. *Commonwealth v. Kingston*, 636 Pa. 438, 143 A.3d 917, 921 (2016). "In all matters involving statutory interpretation, we apply the Statutory Construction Act, 1 Pa.C.S. §§ 1501, *et seq.*, which directs us to ascertain and effectuate the intent of the General Assembly. 1 Pa.C.S. § 1921(a)." *Kingston*, 143 A.3d at 922.

In discerning that intent, the court first resorts to the language of the statute itself. If the language of the statute clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent to the case at hand and not look beyond the statutory language to ascertain its meaning. *See* 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). "Relatedly, it is well established that resort to the rules of statutory construction is to be made

---

18. The example used by the trial court illustrates the point. Assume that a salaried employee paid $1,000 per week works 50 hours in a particular week. Under the FWW method employed by GNC, that employee's "regular rate" for the week is $20—the employee's weekly pay ($1,000) divided by the hours worked (50). Under the 40–hour method urged by Employees, that same employee's "regular rate" would be $25—weekly pay ($1,000) divided by 40. *See* Trial Ct. Op., 10/20/14, at 2–4.

19. Although 34 Pa. Code § 231.43 bears the heading "Regular Rate," it does not provide a general definition of the term.

only when there is an ambiguity in the provision." *Oliver v. City of Pittsburgh*, 608 Pa. 386, 11 A.3d 960, .965 (2011).

*Mohamed v. Commonwealth, Dep't of Transp., Bureau of Motor Vehicles*, 615 Pa. 6, 40 A.3d 1186, 1192–93 (2012) (internal citations modified).

*Thomas Jefferson Univ. Hosps., Inc. v. Pa. Dep't of Labor & Indus.*, —— Pa. ——, 162 A.3d 384, 389 (2017). In addition, when the General Assembly enacts a provision that tracks an existing federal statute, Pennsylvania courts may appropriately consider federal authority that existed at the time of the state enactment in discerning the General Assembly's intent. *See Commonwealth v. Garrison*, 478 Pa. 356, 386 A.2d 971, 977 n.5 (1978) (noting that where "the federal statute is identical in all material respects to the Pennsylvania ... statute, this Court looks to federal decisions for guidance in interpreting" the Pennsylvania statute).

 Here, the statutory language— "regular rate"—does not resolve the interpretive dispute between the parties. In the absence of a statutory definition, the term "regular rate" could support either side's position. "Regular" could mean, as Employees might suggest, the same every week, regardless of the number of hours worked. Or it could mean, as GNC might argue, the straight rate paid to the employee in a given week. Perhaps not surprisingly, neither party advances a plain language argument. The parties do agree on two crucial points, however: First, the General Assembly gave the Secretary the authority to define "regular rate," by

means of a duly promulgated regulation, which could either support or reject the FWW method. Second, the Secretary did not exercise that authority. Our task, therefore, is to decide what the General Assembly intended "regular rate" to mean in the absence of action by the Secretary.[20] Did the General Assembly intend to **prohibit** the "fluctuating" component of the FWW method unless and until the Secretary promulgated a regulation authorizing it? Or did it intend to **permit** that method unless and until the Secretary promulgated a regulation prohibiting it? Unfortunately, we are left to discern meaning from legislative silence.

GNC argues that the answer comes from two undisputed facts: the General Assembly borrowed the term "regular rate" from the FSLA, and at the time the PMWA was enacted, federal law permitted the method of calculating "regular rate" at issue here. While Employees correctly argue that the PMWA was, at least in some respects, designed to give greater protections to workers than the FLSA, *see* Employees' Br. at 15, 21–22, we nonetheless agree with GNC.

First, by the time the PMWA was enacted in 1968, the FLSA was clearly understood to permit employers to calculate the "regular rate" of salaried employees each week by reference to the total hours worked in that particular week. Not only had the Supreme Court so held in *Missel*, 316 U.S. at 580, 62 S.Ct. 1216, but that holding had been expressly codified in a series of federal regulations beginning in 1950. See supra Part II.C.1.a. And the

---

**20.** We note that even had the Secretary begun the process of promulgating a regulation defining "regular rate" when the PMWA was enacted in 1968, or when it was amended in 1988, the General Assembly undoubtedly knew that it would take a significant period of time to finally enact such a regulation. *See*

Sections 5–5b of the Regulatory Review Act, 71 P.S. §§ 745.5–745.5b (describing process for promulgation of regulation, from agency's initial proposal of regulation through final enactment, along with minimum time periods for each step).

General Assembly was plainly aware of the FLSA, borrowing major features of the federal statute, including the term "regular rate," and initially crafting the PMWA to cover only employees not already protected by the FLSA. *See supra* Part II. C.1.b. By the time the General Assembly significantly expanded the PMWA's scope in 1988, any claim that it did not understand the federal meaning of "regular rate" would be implausible.

Second, the General Assembly obviously knew how to deviate from the FLSA when it so intended. For example, the General Assembly delegated regulatory authority to the Secretary, *see* 43 P.S. §§ 333.104(c), 333.109, where Congress had not done the same in the FLSA. Had the General Assembly intended that "regular rate" mean something different than under federal law during the interim between enactment of the PMWA and the promulgation of a defining regulation (an "interim" now running close to 40 years), it surely could (and should) have done so. Employees' argument that the absence of an express statutory authorization compels the conclusion that the General Assembly intended to bar the FWW method is both logically and jurisprudentially unsound.

Finally, Employees' argument based on the PMWA's general purpose is unavailing. While the PMWA arguably was intended to provide broader protections to employees than exist in the FLSA, *see Bayada Nurses*, 8 A.3d at 883; 43 P.S. § 333.101, that generalized intent is far too slender a reed on which to rest a definition of "regular rate" directly contrary to the federal definition known to the General Assembly at the time it enacted the PMWA.

Accordingly, we conclude that the trial court erred in finding that the first part of GNC's FWW method—calculating the "regular rate" by dividing an employee's salary in a given week by the number of hours the employee actually worked that week—violated the PMWA.[21] Absent either legislative or regulatory action, GNC's calculation of the "regular rate" for salaried employees as weekly pay divided by hours actually worked comports with Pennsylvania law.[22]

#### 4. Paying an Overtime Premium of One–Half the Regular Rate

We turn now to the second contested part of the FWW method—the payment of an overtime premium of only one-half the "regular rate" for hours worked over the standard 40. GNC's argument in this regard is essentially the same as the argument outlined above:[23] because the General Assembly adopted the "one and

---

**21.** In reaching this conclusion, we place no reliance on the 1998 Letter written by a Department deputy chief counsel. *See supra* at 287–89 & n.6. By its own terms, the relevant portion of the letter addressed a "major issue which you did not raise," 1998 Ltr. at 5, and was merely the personal speculation of a single attorney for the Department. As far as the record reveals, the Department never provided the letter to anyone other than the attorney who apparently submitted an inquiry on behalf of an unnamed employer. As a result, and in light of the Department's failure to endorse the 1998 Letter in its October 11, 2017 response to this Court's order, we afford the observations in the letter no weight.

**22.** In light of our resolution of the meaning of "regular rate" in the PMWA, we need not address GNC's arguments regarding the appropriate treatment of commissions earned by Employees. *See* GNC's Br. at 49–51 (arguing that even if this Court were to affirm the salary component of the trial court's judgment, the commissions earned by Employees should be divided by all hours worked in a given week, rather than by 40).

**23.** We note that GNC, in its multiple briefs filed with this Court, often treats the two aspects of the FWW method as one.

one-half times" language from the FLSA overtime provision, because federal law at the time the PMWA was enacted permitted the payment of an overtime premium of only one-half the "regular rate," and because the Secretary never adopted a contrary regulation, we should presume that the General Assembly intended to import the federal standard into the FLSA. The central flaw in this argument is that, unlike with the term "regular rate," the Secretary **did** adopt regulations addressing the appropriate multiplier for calculating overtime payments.

 It is well settled that the rules of statutory construction apply to the interpretation of agency regulations. *See* 1 Pa. Code § 1.7; ***Dep't of Envtl. Res. v. Rannels***, 148 Pa.Cmwlth. 182, 610 A.2d 513, 515 (1992). Section 1921(a) of the Statutory Construction Act of 1972 provides that statutes (and thus regulations) should be construed, if possible, to give effect to all provisions. *See* 1 Pa.C.S. § 1921(a). In other words, "[s]tatutory provisions must ... be read together and construed with reference to the entire act, and no provision should be construed in such a way as to render some other provision without effect." ***Rannels***, 610 A.2d at 515.

The PMWA regulations adopted in 1977 contain three references, discussed below, to the number by which the regular rate should be multiplied to determine compensation for overtime. In addition, the Secretary chose not to adopt the federal regulation, 29 C.F.R. § 778.114(a), that expressly authorizes the one-half multiplier used by GNC. Taken together, these regulatory choices compel the conclusion that GNC's payment of an overtime premium of only one-half the "regular rate" violates Pennsylvania law.

The first PMWA regulation addressing the appropriate multiplier for calculating overtime payments is 34 Pa. Code

§ 231.41. Under the heading "Rate," it provides that "each employee shall be paid for overtime **not less than 1–1/2 times** the employee's regular rate of pay for all hours in excess of 40 hours in a workweek." *Id.* (emphasis added). Neither party argues that any of the listed exceptions to this general directive, *see* 43 P.S § 333.105, apply here.

Section 231.43(b), in contrast, authorizes overtime payment to a particular class of employees at one-half the regular rate:

> If the employee is paid a flat sum for a day's work or for doing a particular job without regard to the number of hours worked in the day or at the job and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at the day rates or job rates in the workweek and dividing by the total hours actually worked. He is then entitled to **extra half-time pay** at this rate for hours worked in excess of 40 in the workweek.

*Id.* § 231.43(b) (emphasis added).

Finally, section 231.43(d), the subject of the federal cases discussed above, *see supra* Part II.C.2, provides a safe harbor for employers who establish through agreement with their employees a "basic rate" for payment for work "in excess of the maximum workweek," but only if the employer uses a multiplier of 1.5. All three subsections of this provision use the phrase "not less than 1 1/2 times" the applicable regular-time rate. *See* 34 Pa. Code § 231.43(d)(1)–(3). As both the ***Verderame*** and ***Cerutti*** courts explained, to take advantage of the safe harbor provided by the "agreement or understanding" language of subsection (d), "an employer must accept the burden of paying '1 1/2 times' the rate that results therefrom." ***Verder-***

*ame*, 31 F.Supp.3d at 708; *see Cerutti*, 777 F.Supp.2d at 945.

Reduced to its essence, GNC's argument is that "one and one-half" in the PMWA means the same as it does in the FLSA and its accompanying regulation: the "one" is covered by the employee's straight salary, so the employer satisfies its overtime obligation by paying an additional "one-half" of the regular rate. We disagree.

Had the Department wanted to authorize one-half time payment for employees such as plaintiffs here, it surely knew how to do so. "Although section 231.43(b) pertains to a flat sum for a day's work, and not, as here, a fluctuating workweek, the language used ... certainly illustrates the regulatory [body's] willingness to set out 'one half' overtime standards." *Verderame*, 31 F.Supp.3d at 707.

This observation is reinforced by the Department's decision, undoubtedly a conscious one, to not adopt the federal regulation, 29 C.F.R. § 778.114(a), that expressly authorizes the one-half times regular rate overtime premium. GNC attempts to explain away this decision as meaningless, on the ground that because the Supreme Court in *Missel* had already endorsed the "one-half" approach, no regulation (federal or state) was necessary. This explanation might have had force in the absence of **any** PMWA regulations addressing the appropriate overtime multiplier. It fails, howev-

er, in light of the Department's decision, in the regulations addressed above, to carefully distinguish between situations in which the appropriate multiplier is 1.5 versus 0.5.[24]

Accordingly, we conclude that the trial court correctly determined that the second part of GNC's FWW method—paying an overtime premium of one-half the "regular rate"—violated the PMWA and its accompanying regulations. The governing regulation requires GNC to pay Employees, **in addition to** their regular salary, "not less than 1–1/2 times the employee's regular rate of pay for all hours in excess of 40 hours in a work week." 34 Pa. Code § 231.41.

### III. GNC's Belated Reliance on 34 Pa. Code § 231.43(d)(3)

GNC next asserts that 34 Pa. Code § 231.43(d)(3) permits GNC to calculate overtime compensation using a "basic rate" pursuant to an "agreement or understanding" with Employees. As GNC admits, however, it expressly disclaimed reliance on subsection (d)(3) of the regulation at the summary judgment stage of the proceedings. *See* GNC's Br. at 10 n.2, 51; *see also* Trial Ct. Op., 5/10/16, at 1–2 (stating that, at oral argument on motions for summary judgment, "[t]he parties placed on the record that no party would rely on [section] 231.43(d)(3)" and "the parties agreed that the court shall not consider this provision in this litigation").[25]

---

**24.** While we place no reliance on the Department's 1998 Letter, *see supra* note 21, we note that its discussion of the FWW method focuses solely on the aspect of that method that uses hours actually worked to calculate the "regular rate" and makes no mention of the appropriate multiplier.

**25.** GNC describes its decision to disclaim reliance on subsection (b)(3) as an "erroneous," GNC's Br. at 10, and a "legal error," *id.* at 51. As Employees point out, however, GNC

may also have had a strategic reason for wanting to avoid analysis of its overtime program under that subsection. *See* Employees' Br. at 59 & n.21. In particular, the three federal cases addressing overtime compensation plans under subsection (b)(3)—*Verderame, Foster*, and *Cerutti*—all held that employers were required to pay an overtime premium of one and one-half times the basic or regular rate, as opposed to one-half times that rate, *see supra*, Part II.C.2., which GNC did not do.

In granting Employees' motion for a protective order, the trial court determined that GNC was precluded from taking discovery as to an "agreement or understanding" in light of its prior representation that subsection (d)(3) was inapplicable. See Trial Ct. Order, 5/10/16. We agree and, therefore, find no abuse of discretion. *See Shearer v. Hafer*, 135 A.3d 637, 642 (Pa.Super. 2016) (stating that issuance of protective order is within trial court's discretion and may not be reversed absent abuse of discretion).[26]

## IV. Award of Counsel Fees and Costs

Following the entry of final judgment in their favor, Employees filed a petition for counsel fees, litigation costs, and incentive payments.[27] The trial court awarded Employees $360,000 in counsel fees and $8,000 in litigation costs and denied their request for incentive payments.[28]

As discussed above, we have ruled in favor of GNC with regard to its method of calculating the "regular rate" under the FWW method and, therefore, reverse the trial court's judgment in part. Accordingly, in light of our disposition on the merits, we vacate the trial court's fees and costs order and remand for further proceedings.

## V. Conclusion

In light of the two concurring and dissenting opinions filed in this matter, we summarize our disposition as follows.

First, based on the agreement of Judges Moulton and Solano, we hold that GNC's method of calculating an employee's "regular rate" by dividing the employee's salary in a given week by the number of hours actually worked in that week did not violate the PMWA. Second, based on the agreement of Judges Moulton and Musmanno, we hold that GNC's payment of an overtime premium of only one-half the "regular rate" violated the PMWA and its accompanying regulations. Finally, based on the agreement of Judges Moulton and Solano, we vacate the fees and costs order.

Judgment affirmed in part and reversed in part. Fees and costs order vacated. Case remanded for further proceedings. Jurisdiction relinquished. Judge Solano files a concurring dissenting opinion. Judge Musmanno files a concurring dissenting statement. Judgment Entered.

## CONCURRING/DISSENTING OPINION BY SOLANO, J.:

The lead opinion provides an insightful analysis of the complex and difficult issues presented by this case. In my view, however, the parties have presented questions under the Pennsylvania Minimum Wage Act of 1968 (PMWA), 43 P.S. §§ 333.101 to 333.115, that should not be decided by the courts in the first instance.

The governing statute, which requires payment for overtime "as prescribed in

---

**26.** For the same reason, we reject GNC's "alternative" argument that the trial court erred in granting Employees' motion for class certification because the class members had an "agreement or understanding" with GNC that their overtime would be calculated under 34 Pa. Code § 231.43(d)(3). *See* GNC's Br. at 53.

**27.** *See* 43 P.S. § 333.113 (providing that "employee may recover in a civil action the full amount of such minimum wage[s] [under section 4 of the PMWA] less any amount actually paid to the worker by the employer, together

with costs and such reasonable attorney's fees as may be allowed by the court").

**28.** In its December 29, 2016 opinion, the trial court stated that, in calculating counsel fees, it applied "a multiplier of 1.5 ... which counsel will not be paid if [Employees] lose on appeal." Trial Ct. Op., 12/29/16, at 1. The court noted, however, that if this Court were to reverse the judgment, Employees' "counsel w[ould] not receive any money for the time expended." *Id.*

regulations promulgated by the [S]ecretary [of Labor and Industry]," PMWA § 4(c), 43 P.S. § 333.104(c), commits questions regarding the appropriate way to calculate overtime to an expert administrative agency that is far better equipped to resolve such issues than are the courts. The parties have extensively briefed technical issues involving the intricacies of various calculation methods. The trial court resolved these issues by making pronouncements about the methods' implications for state labor policy and employment rates. The Supreme Court has instructed, however, that "where the subject matter is within an agency's jurisdiction and where it is a complex matter requiring special competence, with which the judge or jury would not or could not be familiar, the proper procedure is for the court to refer the matter to the appropriate agency" for exercise of that agency's primary jurisdiction. *Elkin v. Bell Tel. Co.*, 491 Pa. 123, 420 A.2d 371, 377 (1980) (emphasis omitted). And yet, the trial court made no such referral here, and the parties, undoubtedly conscious of the cost implications of another round of litigation, have expressed no interest in such a course of action. Nor, ironically, has the Department of Labor and Industry, which, because these issues "implicate[ ] ... policy choices," declined to respond to our invitation to share its views on these matters.

Faced with this state of affairs, I believe that the controlling question that is before us is whether the Secretary has promulgated regulations in which he has "prescribed" a method of calculating overtime pursuant to his authority under Section 4(c) of the PMWA.[1] I agree with Judge Moulton that, in the absence of such regulations, Pennsylvania allows overtime to be calculated in the same way as it was calculated under Section 7(a)(1) of the federal Fair Labor Standards Act (FLSA), 29 U.S.C. § 207(a)(1), at the time the PMWA was enacted in 1968. As the lead opinion recounts, the language of Section 4(c)— "Employes shall be paid for overtime not less than one and one-half times the employe's regular rate ..."—is borrowed from and closely tracks that of Section 7(a)(1) of the FLSA. The Legislature gave the Secretary authority to promulgate regulations that departed from the FLSA's method, but nothing in the statute suggests that the Legislature intended the default method applicable in the absence of such regulations to be different from the federal standard approved in *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942), which was well established under Section 7(a)(1) at that time.

Nor do I find any license in the PMWA to engage in an examination of whether some alternative overtime calculation method would better comport with state legislative policy goals. Policy determinations are to be made by our political bodies, not the courts. *See Charlie v. Erie Ins. Exch.*, 100 A.3d 244, 260 (Pa. Super. 2014). If the sixteen Labor Secretaries (from nine gubernatorial administrations)

---

1. No party questions the authority of the Secretary to promulgate regulations on overtime, and there is no question that the Legislature intended to bestow that authority. Not only does Section 4(c) of the PMWA say that overtime shall be "as prescribed in regulations promulgated by the secretary," but the section continues: "the secretary shall promulgate regulations with respect to overtime subject to the limitations that no pay for overtime in addition to the regular rate shall be required except for hours in excess of forty hours in a workweek." 43 P.S. § 333.104(c). Section 9 states that "[t]he secretary shall make and, from time to time, revise regulations ... defining and governing ... overtime standards[.]" *Id.* § 333.109.

who have served in that office from the time of the PMWA's enactment have not found those policies so clear as to base new regulations on them, that is not a task to be undertaken by this Court.

The lead opinion concludes that because no regulations have been promulgated to prescribe a change, the method of calculating the "regular rate" from which the overtime rate is calculated under the PMWA may permissibly be the same as that used under the FLSA. I agree. I part ways with my colleagues, however, with respect to their conclusion that the overtime multiplier mandated by the PMWA must be calculated in a manner different from that used under the FLSA.

The lead opinion concludes that when Section 4(c) of the PMWA says that the payment for overtime must be "not less than one and one-half times the employe's regular rate," it means that the total hourly compensation paid · for the overtime hours must be **1 ½ times higher** than the employee's regular rate, rather than an amount that is **equal to 1 ½ times** the regular rate—the amount required under the FLSA. The difference is that the FLSA method subtracts from the addition-

al hourly compensation for overtime the compensation that already has been paid to the employee for the overtime hours as part of the employee's salary, while the lead opinion's method does not.[2] The lead opinion concludes that this different method is required because in 1977 the Secretary promulgated regulations saying so.[3] I do not agree that this is what those regulations say.

The first regulation cited in this discussion is 34 Pa. Code § 231.41, which is entitled "Rate" and states: "Except as otherwise provided in section 5(a)–(c) of the act (43 P. S. § 333.105(a)–(c)), each employee shall be paid for overtime not less than 1–1/2 times the employee's regular rate of pay for all hours in excess of 40 hours in a workweek." This section merely repeats what the PMWA says in Section 4(c): "Employes shall be paid for overtime not less than one and one-half times the employe's regular rate." Everyone appears to concede that this language in the statute does not reveal how to make the "one and one-half times" calculation; to me, repetition of the same language in the regulation therefore is no more enlightening. This regulation adds nothing to resolution of how to calculate the 1 ½ multiplier.

**2.** The difference is illustrated in footnote 2 of the lead opinion. Under the FLSA method applicable to an employee whose salary does not vary according to the number of hours worked, the amount paid to the employee as 1 ½ times her regular rate for overtime hours is determined as follows: (1) the employee already has been paid 100% of her regular rate ($20/hr. in the lead opinion's example) for the overtime hours (her regular rate multiplied by 1) as part of her salary, and that amount therefore need not be added again; (2) she needs, however, to be paid an extra $10/hr. (that is, an additional one-half of her regular rate) to bring her overtime rate up to an amount that equals 1 ½ times her regular rate. *See* 29 C.F.R. § 778.114(a) ("[p]ayment for overtime hours at one-half [the regular] rate in addition to the salary satisfies the overtime pay requirement"). Under the lead

opinion's method, however, the overtime payment must equal an additional 1 ½ times the regular rate, or an extra $30/hr. ($20 x 1 ½); this will be paid in addition to the employee's regular $20/hr. salary covering the overtime hours.

**3.** In part, the lead opinion bases this conclusion on three federal trial court decisions that considered this question, *Verderame v. RadioShack Corp.*, 31 F.Supp.3d 702, 709–10 (E.D. Pa. 2014); *Foster v. Kraft Foods Global, Inc.*, 285 F.R.D. 343, 348 (W.D. Pa. 2012); and *Cerutti v. Frito Lay, Inc.*, 777 F.Supp.2d 920, 945 (W.D. Pa. 2011). As the lead opinion acknowledges, federal decisions are not controlling on this question of Pennsylvania law, and I find these decisions unpersuasive for the same reasons as I discuss in the text.

I reach the same conclusion with respect to the Secretary's safe-harbor regulation, 34 Pa. Code § 231.43(d):

No employer may be deemed to have violated [the overtime regulations] by employing an employee for a workweek in excess of the maximum workweek applicable to the employee under § 231.41 if, under an agreement or understanding arrived at between the employer and the employee before performance of the work, the amount paid to the employee for the number of hours worked by him in the workweek in excess of the maximum workweek applicable to the employee under § 231.41:

(1) In the case of an employee employed at piece rates, is computed at piece rates not less than 1 1/2 times the bona fide piece rates applicable to the same work when performed during nonovertime hours.

(2) In the case of an employee's performing two or more kinds of work for which different hourly or piece rates have been established, is computed at rates not less than 1 1/2 times the bona fide rate applicable to the same work when performed during nonovertime hours.

(3) Is computed at a rate not less than 1 1/2 times the rate established by the agreement or understanding as the basic rate to be used in computing overtime compensation thereunder;

and if the average hourly earnings of the employee for the workweek, exclusive of payments described in subsection (a)(1)–(7), are not less than the minimum hourly rate required by applicable law and if extra overtime compensation is properly computed and paid on other forms of additional pay required to be included in computing the regular rate.

Insofar as is relevant here, this regulation says no more than that an employer who complies with the overtime requirements of the statute will not be held to violate it.[4] In words identical to those used in Section 4(c) of the PMWA (except that they employ numerals instead of the words "one and one-half"), it says that the overtime must be at a rate "not less than 1 1/2 times" the regular rate. Again, the regulation adds nothing new on the question before us and, in particular, says nothing about how to calculate the 1 ½ multiplier.[5]

The result advanced by the lead opinion is influenced principally by 34 Pa. Code § 231.43(b), which states:

If the employee is paid a flat sum for a day's work or for doing a particular job without regard to the number of hours worked in the day or at the job and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at the day rates or job rates in

---

4. The regulations repeat a similar concept in Section 231.43(f), which says that an employer at a retail or service establishment will not be in violation if a workweek exceeds 40 hours and "[t]he regular rate of pay of the employee is in excess of 1 1/2 times the minimum hourly rate applicable." 34 Pa. Code § 231.43(f)(1).

5. The statutory language also is repeated in Section 231.43([a]), which states that the regular rate from which the overtime rate is calculated does not include extra compensation for premium work on extra days "where

such premium rate is not less than 1 1/2 times the rate established in good faith for like work performed in nonovertime hours on other days" or, if there is an employment contract, "where the premium rate is not less than 1 1/2 times the rate established in good faith by the contract or agreement for like work performed during the workday or workweek." 34 Pa. Code § 234.43([a])(6), (7). The Secretary's frequent repetition of the statutory language in these regulations does not advance our inquiry.

the workweek and dividing by the total hours actually worked. **He is then entitled to extra half-time pay at this rate for hours worked in excess of 40 in the workweek.**

34 Pa. Code § 231.43(b) (emphasis added). Notably, this is the **only** regulation promulgated by the Secretary that actually discusses the method of calculating overtime. Critically, it says to calculate overtime **in the same way as overtime is calculated under the FLSA**—by adding "extra half-time pay," not an extra one and one-half of the worker's pay. The regulation thus directly supports the conclusion that the Secretary intended overtime to be calculated under the PMWA in the same way as it was calculated under federal law.

The lead opinion reasons, however, that because all of the other regulations repeat the "not less than one and one-half times" language from the statute and only this regulation mentions calculating overtime by adding "extra half-time pay," it must be that all of the other regulations do not contemplate calculating overtime by adding only the extra one-half of the regular rate (the FLSA method). Instead, the opinion posits that the other regulations must intend something else: adding another full 1 ½ times (an additional 150%) of the regular rate. This conclusion necessarily assumes that the Secretary intended by the 1977 regulations to provide for overtime to be calculated in a different (and less generous) manner for employees covered by Section 231.43(b) than for all other employees. But I discern nothing in the regulations (or the statute) to support such an intent. Section 231.43(b) applies to employees who are paid a flat sum for a day's work or a flat sum for a particular job. No one has proffered any reason why the

Secretary would elect to treat those employees differently than others.

If a distinction between Section 231.43(b) and the other regulations were the key to resolving the overtime calculation question presented by this case, I would have expected the Department of Labor and Industry to advise us accordingly in response to the inquiry that we addressed to it by our September 22, 2017 order.[6] The Department surely is familiar with its regulations on this subject, would know whether the Secretary promulgated Section 231.43(b) to create a distinction in overtime calculation methods among different classes of employees, and would also be aware that this distinction provided a simple and direct answer to the calculation question. Instead, however, the Department's response was at best noncommittal and at most agnostic. The response undermines any attribution of such great significance to Section 231.43(b).

In sum, the Secretary has not promulgated regulations stating that overtime is to be calculated by adding an additional 150% of an employee's regular rate when paying overtime. The regulations parroting the statutory language simply do no more than to parrot the statutory language. They state nothing about how to do the calculation. The only regulation addressing the subject, Section 231.43(b), says to calculate overtime in the same way as is done under the FLSA. Nothing in the regulations states that Section 231.43(b) is an exception to calculation rules that would otherwise apply. Finally, the fact that the Secretary did not promulgate a regulation similar to the federal regulation that formally codified the holding in *Missel* is a red herring: the default position under the statute is that the federal method ap-

---

**6.** Our order asked, "for hours worked over 40, is the overtime to be paid to salaried employees an additional one and one-half times the regular rate, or an additional one-half times the regular rate"?

proved in *Missel* already applied, and because the Secretary promulgated no regulations that departed from that method, there was no need for another regulation reiterating the existing default rule.

For these reasons, I respectfully dissent from the portion of my colleagues' decision regarding the 1 ½ multiplier. I otherwise concur with the result.

## CONCURRING AND DISSENTING STATEMENT BY MUSMANNO, J.:

I respectfully disagree, and would affirm the judgment of the trial court, in its entirety, for the reasons stated in its Opinion. Further, I would affirm the trial court's Order with respect to the award of counsel fees and costs.